# BELFAST & MOOSEHEAD LAKE RAILWAY CO. *vs.* CALVIN MOORE.

*Stock—subscription for. Agreement not affected by charter—or subsequent statute. Condition precedent.*

The defendant, with numerous others, signed a subscription of the following tenor: 'We, the undersigned, agree and bind ourselves to take the amount of shares set against our respective names, in the stock of the Belfast & Moosehead Lake Railway Company agreeably to the foregoing conditions.' *Held*, That the simple agreement to 'take' imposed no personal obligation to pay for the shares.

Also *held*, That the 'conditions' which contained no words of promise, did not change the force of such agreement, in this particular.

And the construction of such an agreement is not affected by a provision in the charter purporting to render the subscriber liable for the balance remaining due after a sale of his shares.

Neither does c. 206 * of the Special Laws of 1869 affect the contract made before its enactment, even though viewed as an amendment of the charter.

The defendant agreed in writing, that on the execution and delivery to him by the directors of the railroad of certain mortgage bonds mentioned in said agreement, he would pay the assessments theretofore made to the amount of the par value of the stock previously subscribed by him. *Held*, That the delivery of the bonds was a condition precedent to the payment of the assessments.

ON REPORT.

ASSUMPSIT to recover assessments on five shares of the plaintiff company, amounting in all to the par value—$500.

The subscription contract was as follows:

1. Every person or corporation subscribing to said stock shall be required to pay or secure to the acceptance of the treasurer of said

---

* SPEC. LAWS OF 1869, c. 206. The Belfast & Moosehead Lake Railroad Company, in addition to the remedy already provided for the collection of the subscriptions to its capital stock and assessments made by said company, shall have the right to maintain an action of special assumpsit in the name of said company to enforce payment of such subscription or assessment. And such action shall be maintained if the terms and conditions of the subscription to the capital stock of said company and the assessments upon it have been substantially complied with, and shall not be defeated by any mere informality in organizing said company, or in electing its officers, or other merely informal act of the company or of any of its officers.

company, and at the option and under the direction of said committee, the sum of ten dollars ($10) on each share so subscribed,— said money to be paid or security given to said treasurer, whenever required.

2. If more stock shall have been subscribed for than is required to construct said road, at the estimated cost or more than allowed by the charter, the shares shall be apportioned *pro rata* among all the subscribers *bona fide*, who have complied with rule first as above named, and who have thereby become members of this corporation.

3. Said books shall remain open until said stock is all so subscribed for, and fully taken, or until said directors may think proper to close the same. Said committee shall advise the directors from time to time of their progress in obtaining subscriptions to said stock.

4. No assessment whatever, except for a preliminary survey and location of said road, shall be made upon any share or shares so as above subscribed; nor shall any work upon said road be commenced until the full amount be secured for its completion to Newport, thereby avoiding the necessity of any mortgage or incumbrance being ever contracted by this corporation.

*Resolved*, That said committee be instructed to canvass at an early day, not only the city of Belfast, but all the towns on the line of said road, or interested in its construction; and if they shall fail to obtain the required sum, that then they shall, at once, report the same to this board, together with the objections in detail to subscribing, in order that the same may be laid before the corporation, and such action taken thereon as the circumstances may require.

We the undersigned do hereby agree and bind ourselves to take the amount of shares set against our respective names in the stock of the 'Belfast & Moosehead Lake Railway Company,' agreeably to the foregoing conditions.

Said shares to be of the preferred stock of said company.

The defendant subscribed for five shares at $100 each.

The second contract was as follows:

Whereas, as the undersigned have heretofore subscribed to take shares in the capital stock of the Belfast & Moosehead Lake Railroad company, to the number and amount specified in the book of subscription in which their names appear, upon which shares assessments have been made, and remain unpaid; and whereas said company by its directors has agreed and hereby agree, so soon as the required authority so to do can be obtained, to issue to each subscriber stock certificates to the amount of his subscription, and bonds and mortgage as collateral to the same, subject to a prior mortgage which may be given to raise the amount of money required to complete said road, to the limit of one hundred and fifty thousand dollars, said bonds bearing interest as provided in the 18th article of the by-laws of said company.

In consideration thereof, said undersigned agree that in the execution and delivery of said mortgage bonds, they will pay the assessment heretofore made to the amount of the par value of said stock, and in ratification of this agreement will pay, within five days from date hereof, the first assessment heretofore made, namely, 15 per centum.

Signed by the defendant and others.

Belfast, Dec. 17, 1869.

The case having turned upon the construction of these two contracts, no further report of the evidence is essential, other than what is found in the opinion.

*A. G. Jewett & W. H. McLellan*, for the plaintiffs.

1. A subscription for shares is equivalent to a promise to pay calls. 1 Redf. on Railways, 162, and cases on 163, 164, and 165; Angell & Ames on Corp. 490 and 492, and cases cited; *Spear* v. *Crawford*, 14 Wend. 20; 12 Conn. 507.

The subscriber for stock is 'held liable' by the charter.

2. By the first condition he agrees that he may be required to pay or secure the sum of $10.00 on each share so subscribed, and that the money is to be paid whenever required.

3. By the 4th condition, he agrees that calls may be made upon his shares when the full amount is secured for the completion of the road to Newport. In the judgment of the directors, the amount was secured by the amount of stock subscribed for, also by the contract with Willson, Tennant & Co., July 8, 1868, after which, calls were made for the full amount of defendant's subscription.

The directors were the tribunal to settle questions whether enough had been secured to build the road to Newport. 1 Redf. on Railways, 65, note; 21 Wend. 211; 41 Maine, 512; 16 Gray, 414.

4. The plaintiff is entitled to recover under chapter 206 Special Laws of 1869, which is substantially an amendment of the charter.

This creates no new or additional liability, as before this act the stock could be sold and the balance collected.

By R. S. of 1857, c. 46, § 17, the charter is liable to be amended, altered, or repealed, etc. The defendant became a member of the corporation and has no defense, even if the legislature subsequently did increase his liability. 1 Redf. on Railways, 199; 30 Maine, 547; 4 Kern. (N. Y.), 336.

*N. Abbott & Jos. Williamson*, for the defendant.

DANFORTH, J. This is an action to recover the assessments made upon five shares of the stock of the plaintiff company. The plaintiff has declared and relies upon two separate written contracts entered into by the defendant. The first is an agreement simply to take five shares of the stock. In the writing we find no words showing a promise to pay for the shares, other than is implied in the word 'take,' either in the contract or the conditions annexed to it. The fourth resolve referred to in the argument of counsel, and annexed to the contract, does not in any degree change the force of the agreement so far as it imposes or fails to impose a personal liability. In this resolution are no words of promise; it is at most an assent that assessments may be made under the condition therein expressed.

This contract, like all others, is to be construed so as to give effect to the intention of the parties to it. Upon this point there is no conflict of authorities so far as we are aware, either in this country or in England, though there is a difference of opinion as to the inference to be drawn from the language in certain forms of subscription.

It is held by many courts that a subscription to stock like the one signed by the defendant, or indeed any subscription, creates an obligation of actual payment, unless such an obligation is excluded by its terms. *Troy & Boston R.* v. *Tibbitts*, 18 Barb. 297. On the other hand, by a series of decisions commencing as early as the case of *Andover & Medford Turnpike Corporation* v. *Gould*, 6 Mass. 40, when this State was a part of Massachusetts and continuing through our own reports down to the present time, it has been uniformly held that such a subscription as the present imposes no personal obligation to pay, and that the only remedy for the collection of assessments is that provided by the charter. Many of these decisions, and sufficient for our purpose, are referred to in the case of *K. & P. R. R. Co.* v. *Kendall*, 31 Maine, 470. The same principle is also recognized in *P. & K. R. R.* v. *Dunn*, 39 Maine, 594, and in many other cases, both in this and other States, which it is unnecessary to cite.

The language of the contract now before us so nearly conforms to many of those which have received a judicial construction in our own courts as almost inevitably to lead us to the conclusion that it was made with express reference to those decisions.

The parties must have known of those decisions, and the meaning then given to the language they have used. There is here no question as to any principle of the law of contracts; it is only as to the meaning of words. Those used by the parties had been distinctly defined by the proper authority. We must assume, then, that they used these words with express reference to such definition, and as expressing the meaning there given to them. To now overrule those cases, and hold that the words of their agreement do not mean what the law as authoritatively expounded at the time of

making it declared they did, would be to make a new contract for the parties, one to which they have not assented, and thereby violate one of the fundamental principles of law as well as justice, and add another reason for the prevailing belief in the uncertainties of the law.

Whatever, therefore, might have been our opinion of this question, were it a new one, we see no sufficient reason for overruling a series of decisions so numerous and so uniform as those under which this contract was made.

But it is contended that those cases rest very much upon the particular charters under which the questions at issue had their origin. It is true that in many instances at least, the charters provided for a forfeiture of the stock only, and not for any personal liability, while the charter in this case provides that the subscriber shall be liable for the balance remaining due after a sale of his shares. But how does this affect the construction to be given to the contract? The charter does not purport to make a contract between the parties; it simply provides a remedy for the corporation against a delinquent stockholder. In subscribing for stock the subscriber inserts just such terms and conditions as he sees fit, and he can be holden to no others. If the contract provides for a personal liability, that liability may be enforced by an action, as in any other contract. If it contains no promise of payment, as in this case, the only remedy is that provided by the charter. The liability by the contract is one thing, that by the charter is another, and is separate and distinct from the former. If the plaintiff would enforce a claim under a promise on the part of the defendant, he must have the proper evidence of that promise. If he would pursue the remedy provided by the charter, it must be followed according to its terms. In this case, as we have seen, the subscription paper contains no promise whatever. It is simply an assent on the part of the defendant to become a stockholder, and, as such, imposes no personal liability. As, then, the parties did not choose to impose any personal liability by their contract, none exists except that imposed by the charter. In that we find none except for the balance

after a sale of the shares. Such a claim is not asserted in this action.

Nor can we assume, as contended, that by an assent to a partial or conditional liability, the defendant is to be holden to an absolute one. Nor will the law under such an assent hold him for the whole. If he is to be holden under his contract, we must take that contract as it is; if under the charter, we must take that as we find it. At the time this charter was granted, it was well known that by the law as administered in this State, no obligation to pay was imposed upon the owner of stock without an express provision therefor. It is unaccountable, then, that the legislature should have imposed a limited liability when an unlimited one was intended. This provision in the charter would seem to be against rather than in favor of the plaintiff's position. It follows that this action cannot be maintained upon the contract alone, or in connection with the charter.

Nor can it be sustained under chapter 206 of the Special Laws of 1869. That act does not purport to change or modify any contract to which the company is a party, but only to give an additional remedy. Now if this statute is to have the force claimed for it as against this defendant, it imposes a full liability to pay all the assessment when his contract imposed none, or under the charter only a limited one. As the act was passed subsequent to the contract it cannot thus affect it. Nor does it alter the case if we view it as an amendment to the charter. Whatever effect an amendment of the charter may have upon the company, it cannot affect its contracts already made.

A member of the company can contract with it the same as any other persons, and such contracts are governed and protected by law as other contracts are. If, then, the act imposes upon the defendant any liability under his contract which did not exist at the time it was made, it is so far void. If it does not, it affords no aid to the plaintiff in this case.

In the second contract relied upon by the plaintiff, the defendant's promise to pay the assessments, is expressly made to depend

upon the execution and delivery of certain bonds therein described.
This is a condition precedent, the performance of which on the
part of the plaintiff is necessary to the maintenance of the action.
The testimony fails to show that any such bond has been delivered
or tendered to the defendant, but such delivery or tender is denied
by him.                            ·                *Plaintiff's nonsuit.*

APPLETON, C. J.; CUTTING, BARROWS, VIRGIN, and PETERS,
JJ., concurred.