## UNIVERSAL RIM CO. v. SCOTT.

District Court, N. D. Ohio, E. D. March 16, 1922.

No. 674.

1. Patents ⟐211(3)—Licensee, who has paid royalties for years, is estopped to claim that article made was not within patent.

A licensee, who has manufactured an article pursuant to the license agreement and has regularly paid royalties during a number of years, is thereafter estopped to set up as defense to a demand for royalties that the article as made was not within the claims of the patent.

2. Patents ⟐129(3)—Licensee is estopped to show invalidity as defense to action for royalties while relation continues.

Licensee is estopped to show invalidity as defense to action for royalties only so long as relation of licensor and licensee continues.

3. Patents ⟐129(3)—Licensee may, after notice, defend against payment of royalties accruing after patent has been adjudged invalid.

Licensee, if evicted from use of patent by judgment of court declaring patent invalid, may, after notice to licensor defend against payment of royalties subsequently accruing.

4. Patents ⟐129(3)—Licensee under invalid patent may renounce license, and, after notice, may defend against action for royalties as stranger to patent.

Licensee, if patent is in fact invalid, may renounce license, and, after notice, may defend against action for royalties with same freedom as may stranger to patent, and licensor is remitted to infringement suit.

5. Receivers ⟐90—Receiver is not bound by executory license contract unless he adopts it.

Receiver is not bound by executory license contract made by defendant unless he adopts it, and is entitled to reasonable time for election.

6. Receivers ⟐90—Rights and liabilities of receiver respecting adoption or renunciation of executory contract are determined by equitable principles.

Principles governing adoption or renunciation by receiver of executory contract are equitable in their nature and are equitably applied to facts of each case.

7. Receivers ⟐90—Receiver held entitled, with approval of court, to renounce license contract, but liable for royalties accruing thereunder since his appointment.

Receiver who continued to manufacture and sell articles covered by a license contract made by defendant for more than a year after his appointment, but without either adopting or renouncing the contract or payment of royalties thereunder, *held* entitled to renounce the contract at his election, with leave of court, but liable for royalties on the articles he has made and sold up to the time of his renunciation.

In Equity. Suit for injunction by the Universal Rim Company against Frank A.

Scott, receiver of the Standard Parts Company. Injunction withheld subject to election by defendant.

Henderson, Quail, Siddall & Morgan, of Cleveland, Ohio, for plaintiff.

A. V. Cannon (of White, Cannon & Speith), of Cleveland, Ohio (B. M. Kent, of Cleveland, Ohio, of counsel), for defendant.

WESTENHAVER, District Judge. Plaintiff's bill, filed by leave of court duly given, seeks an injunction restraining the defendant from manufacturing or selling certain demountable rim constructions alleged to be covered by the terms of the license agreement dated May 25, 1916, for the non-exclusive use of certain patents. The defendant has answered. The cause was heard upon application for a preliminary injunction and supporting and opposing affidavits. At the conclusion of the hearing, parties by consent submitted the cause as upon a final hearing for a decision and decree upon the merits.

The receiver was appointed September 1, 1920. The license agreement contains no provision permitting its cancellation earlier than May 25, 1926. It provides, in article 15, that the only form of split demountable rims which the licensee contemplates putting out is that of the type known as No. 71, and also certain Baker types, and these rims, the licensee admits for the purposes of the agreement, are covered by the patents therein, recited. These rims are also described as transversely split rims. The Standard Parts Company, the licensee, manufactured and sold rims of this type continuously until the appointment of the receiver. It had also furnished statements and paid royalties in the manner and on the terms provided by article 4, except only for the month of August, 1920, immediately preceding the receiver's appointment, which accounting was not due until the 15th of September following.

The receiver since his appointment has continued to manufacture and sell split demountable rims of the type known as No. 71, or transversely split demountable rims. He is also making and selling another type known as the Hayes rim, as to which a question is made whether or not it is within the terms of the license and of the kind described in article 15. The receiver has not rendered any statements nor made any payments as required by article 4, and as had previously been done by the Standard Parts Company. Frequent demands therefor have been made from time to time without success. A con-ference was had about December 14, 1920, between plaintiff's president and defendant's patent counsel, Bert N. Kent, and the two witnesses disagree in part as to what then transpired. This difference is not very material. In all other respects there is no substantial conflict in the evidence. Nothing further was done after this conference by plaintiff except to continue writing letters from time to time, making demands for statements and payment of royalties, until October, 1921. At this time the defendant receiver notified plaintiff's counsel in writing that no royalties had been or would be paid unless the court decided that payment should be made, and that there were many reasons on both sides why the contract should be adjudicated. Neither party prior thereto had brought this controversy to the attention of the court. The receiver had not asked for leave to renounce the license agreement, and the plaintiff had not, as was its privilege, applied to the court to compel an election by the receiver. Shortly after receipt of this last letter, plaintiff applied for and obtained leave and filed, pursuant thereto, the present bill.

The question mainly discussed is whether the receiver, after his appointment, has adopted the license agreement or has renounced and repudiated it, and if, in the latter contingency, he may continue to manufacture split demountable rims of the type agreed to be covered by the license in violation of the terms thereof. In the answer defendant relies mainly upon the proposition that the receiver is not bound to adopt an executory contract of the Standard Parts Company, that, in point of fact, he has not adopted or elected to be bound by this particular contract, but that, on the contrary, he has renounced the same after a delay such as was reasonable to permit adequate inquiry as to the advisability of so doing. In addition thereto, the answer asserts that the plaintiff has not prosecuted infringers vigorously and in good faith, as is required by article 8 of the license agreement, and, as a result of such failure and neglect, unlicensed competitors are making and selling the same type of transversely split demountable rim in such active competition that no benefit has or will result to the receiver from an adoption of the license agreement. This last contention will be first disposed of.

Article 8 is probably an independent, and not a dependent, covenant. Courcier v. Graham, 1 Ohio, 331, 340; Gould v. Brown, 6 Ohio St. 538, 540; Belfast, etc., Ry. v. Moore, 60 Me. 561; Milldam F'dry Co. v. Hovey, 21 Pick. (38 Mass.) 417, 437. This

being so, plaintiff's alleged violation thereof may give defendant a right of action in the nature of a counterclaim, but would not operate as a full defense. Moreover, it is admitted that neither the Standard Parts Company nor the defendant receiver has given notice in writing such as is required by article 8 in order to impose an obligation to pay one-half the total expenses, as incurred, of the litigation necessary in vigorously prosecuting infringers; and, having failed to do so, defendant is not in position to complain that infringers are not prosecuted more vigorously. Furthermore, the affidavits show with reasonable clearness that all licensees are observing similar license agreements; that there are only two infringers, the Kelsey Wheel Company and the Firestone Tire & Rubber Company, both of whom have been sued; that the delays in prosecuting the Kelsey Wheel Company case are not due to any neglect of plaintiff; and that the delay in prosecuting the other case is due to the plaintiff's judgment that it was wiser to permit that case to follow the other. In view of all these circumstances, I am of opinion that this contention is not sound and does not bar plaintiff from relief.

Upon the main proposition, plaintiff contends that the receiver has, by long-continued use, adopted the license agreement as his own contract, and that, even if he has or should renounce it, he may not make transversely split demountable rims of the kind covered by the contract without observing all the terms of the license agreement. These contentions are bottomed upon the proposition that neither the original licensee nor the receiver may, during the stipulated term of the license agreement, renounce or cancel it without the licensor's consent, or test the validity of the patents covered thereby or make and sell rims agreed to be within the terms thereof, except upon condition that all the terms of the license agreement be complied with. I have given much consideration, both before and since coming on the bench, to the legal principles involved in these contentions, and, without reviewing at length the authorities, I shall state briefly what I regard as the correct, if not settled, rules of law.

[1-4] (1) A licensee under a patent, who has manufactured an article pursuant to a license agreement and has regularly paid royalties during a number of years, is thereafter estopped to set up as a defense to a demand for payment of royalties that the article as made was not within the claims of the patents. Sproull v. Pratt & Whitney (C. C.) 97 F. 807; Andrews v. Landers (C. C.) 72

F. 666. (2) A licensee is estopped to show invalidity of licensed patents as a defense to an action for royalties only so long as the relation of licensor and licensee continues and the licensee uses and enjoys the benefit and protection of the patents covered by the agreement. (3) A licensee, if evicted from the use of the patents by a judgment of a court of competent jurisdiction declaring the patents invalid, may, after giving notice to the licensor, defend against the payment of royalties subsequently accruing. (4) A licensee, if the patents are in fact invalid, may, without waiting to be evicted, renounce and abandon the license, and after giving notice thereof to the licensor, may defend against an action to enforce the license or to recover royalties subsequently accruing, with the same freedom as may a stranger to the patent, and the licensor is remitted to his infringement suit.

These principles of law, notwithstanding some respectable dicta to the contrary, will be found fully supported and established by the following authorities: Holmes v. McGill (2 C. C. A.) 108 F. 238, 244; Mudgett v. Thomas (C. C.) 55 F. 645, 647; White v. Lee (C. C.) 14 F. 789; Brown v. Lapham (C. C.) 27 F. 77; Macon Knitting Co. v. Leicester, 65 N. J. Eq. 138, 55 A. 401; Harlow v. Putnam, 124 Mass. 553; Ross v. Dowden, 147 Iowa, 180, 123 N. W. 182; Edison Elec. Co. v. Thackara Mfg. Co., 167 Pa. 530, 31 A. 856; Skinner v. Wood Mowing Mach. Co., 140 N. Y. 217, 35 N. E. 491, 37 Am. St. Rep. 540; K-W Ignition Co. v. Unit Coil Co., 93 Ohio St. 128, 137, 112 N. E. 199.

The contention is made, and some support therefor may be found in the books, that a licensee cannot, in the absence of a provision permitting the license to be terminated, contest the validity of patents covered by the agreement, even after renunciation and notice. This contention originates in the common-law doctrine of estoppel by covenant. It requires to support it, first, a special admission of fact, namely, that the patent is valid, or, that the licensor is the first and true inventor of the invention covered by the patent; and, second, a deed or covenant under seal which, at common law, barred a party thereto from disputing the truth of an admitted fact. It is doubtful if this rule ever had any application in equity, which, from early days, gave relief against deeds or agreements under seal in certain situations; but, be that as it may, the true rule, in my opinion, now is that the licensee, whenever he ascertains that the patents covered by the license agreement are invalid, may refuse to

be further bound thereby, and, upon repudiation and notice, may thereafter defend against an action for royalties or an infringement suit as freely as may a stranger. This is particularly true in a case like the present, where the license agreement contains no recital or clause admitting the validity of the patents and no stipulation not to dispute or contest the validity thereof. If the patents are in fact invalid, then there is no continuing consideration for the agreement, and, as was said by Mr. Justice Brown in Pope Mfg. Co. v. Gormully, 144 U. S. 234, 12 S. Ct. 636, 36 L. Ed. 414: "It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly." So long, however as the invalidity of a patent has not been judicially declared and the licensee continues to operate thereunder without repudiation or notice such as will place him in the attitude of an infringer, there is no such want or complete failure of consideration as will permit the licensee to refuse to pay royalties which have been previously earned.

[5] Such would be the rights of the respective parties except for the intervention of the receivership. This contract being executory, the receiver is not bound thereby in the absence of an election to adopt the same as his own contract, and he is entitled to a reasonable time within which to determine whether the contract should thus be adopted. In this case, upon the facts, I am of opinion that the receiver has neither adopted the contract nor has he repudiated it and given such notice as would, if he were a private agent, place him in a situation where he might be sued as an infringer or defend against royalties subsequently accruing, upon the ground of invalidity in the patents. The evidence relating to this point will be adverted to hereafter.

[6] The principles governing the adoption or renunciation by a receiver of an executory contract are equitable in their nature and are equitably applied to the facts of each case. The nature of these principles and the manner of applying them are fully shown by the following cases: Sunflower Oil Co. v. Wilson, 142 U. S. 313, 12 S. Ct. 235, 35 L. Ed. 1025; Quincy, etc., Ry. Co. v. Humphreys, 145 U. S. 82, 95, 12 S. Ct. 787, 36 L. Ed. 632; United States Trust Co. v. Wabash Western Ry. Co., 150 U. S. 287, 299, 14 S. Ct. 86, 37 L. Ed. 1085; Dayton Hydraulic Co. v. Felsenthall (6 C. C. A.) 116 F. 961; 34 Cyc. 258–263.

In Sunflower Oil Co. v. Wilson, an executory contract for the use of railway rolling stock, obliging the lessee to pay an annual rental, was held not to be binding on the receiver and might be terminated and the rolling stock surrendered notwithstanding the receiver had taken possession of it and had used it for a number of months. The opinion is expressed that, upon terminating the contract and returning the rolling stock, the receiver should pay the stipulated rental or just compensation during the period he had used it, but, inasmuch as the stipulated rental had been paid in full, no consideration seems to have been given to the nature and extent of the receiver's obligation to make payment during the period during which he had retained the property before adopting the contract.

In Quincy, etc., Ry. Co. v. Humphreys, a receiver was permitted to surrender a leased line of railway after having taken possession and operated it without a disclaimer for more than a year. It appeared that during such period all the earnings derived from the use of the leased line had gone to pay operating expenses and charges prior to the rent, and it was held that the lessor was not entitled to any compensation as against the estate for the rent or reasonable use of the leased line, since no benefit or advantage had accrued to the estate. The failure of the lessor to apply to the court for relief during the intervening period is commented on in the opinion as a circumstance showing that the lessor had not been unreasonably delayed in recovering its property by the receiver's conduct.

In United States Trust Co. v. Wabash Western Ry. Co., a receiver was permitted, after sixteen months, to renounce a lease after having taken possession and operated the leased railway during the intervening period. It appeared that the lessor had not applied earlier for an order directing the receiver to surrender the leased line, and that all the earnings were used in paying operating expenses and charges prior to the rent; hence compensation was denied the lessor except for the last month, during which time the lessor was delayed in regaining possession owing to an objection of the receiver to its application for an order on the receiver to surrender the leased line.

In Dayton Hydraulic Co. v. Felsenthall, the receiver had neither adopted nor renounced a lease taken on a parcel of real estate belonging to the estate, during a prolonged period of years, but was held liable only for the payment of rent from the time demand upon him had been made for the surrender of the premises, with which he had refused to comply.

A consideration of the facts of these cases and of the legal principles therein declared will disclose the equitable considerations upon which action in this and similar cases should be based. In cases where the receiver has had possession and has used property in carrying on the business, he should be required to make compensation. This may be said to be the usual rule where such possession appears to have been to the profit and advantage of the estate. If no such profit or advantage has resulted to the estate, and the receiver has done nothing except to abstain from trying to get rid of the leased property, no rental or compensation is allowed except after the receiver has refused to comply with the lessor's demand for a surrender of it. If the executory contract is one for materials and supplies, obviously the estate is benefited to the extent of the agreed or market value thereof.

The nature of patent property, however, is somewhat different. If the patents had been judicially declared invalid, then the receiver has had possession of nothing in the nature of a property right. So long as the patents have not been judicially declared to be invalid, the receiver has had possession of, and has, under the license agreement, used patents which are presumptively valid, and has done so under such circumstances as would, between private persons, support an obligation to pay the agreed royalty. This is true even though grave doubt may exist as to their validity. If the receiver does not adopt, or is permitted to renounce, the executory terms of a license agreement because it is for the benefit of the estate so to do, a different question still remains about the surrender of the property, because of the difference in the nature of patent property and tangible property. If the patents are in fact invalid, the receiver does not continue to use the patentee's property, even though he may manufacture and sell an article which, by the terms of the license agreement, was admitted to be covered by the patents.

As already said, the receiver has not adopted the license agreement. Plaintiff is as much to blame as the defendant for not having brought this situation more promptly to the attention of the court and compelling either a surrender of the license agreement or an adoption of it. Neither party has seemed desirous of taking this course and bringing the matters to an issue. The plaintiff has not desired a surrender of the license and a return of its property but a continuation of it in force and a payment of the agreed royalties. The defendant's attitude, prior to filing his answer herein, seems to have been that the license agreement was not giving the desired benefit and protection; hence his unwillingness to adopt the agreement as his own and pay royalties until there was a judicial determination of the respective rights. His conduct previous to filing the answer herein has been ambiguous, neither evincing an intention to adopt the agreement nor to repudiate it and stand as a stranger in an infringement suit. Upon the pleadings as framed, notwithstanding the denial in the answer that the receiver is making and selling rims covered by any valid claims of the patent, no questions are presented for decision or can be decided except whether or not the license agreement has been adopted or may be renounced, or whether plaintiff's failure to comply with article 8 thereof is a full defense.

[7] In this situation, my conclusion is that the receiver is now entitled to refuse to adopt the license agreement and make it a receivership contract, but that, if he does so, it should be by an explicit notice to that effect, in order that he may acquire the status of an infringer and compel the plaintiff to seek redress against him in that character. He ought not, however, so do without applying for and obtaining the approval of the court having administrative charge of the receivership. The plaintiff, however, is entitled to compensation upon equitable principles during the period prior to such renunciation and notice. It seems to me that equity requires the receiver during the period prior to renunciation to make compensation on the same basis as if he had succeeded as an assignee to the rights of the Standard Parts Company. In that situation he would be required to pay the agreed royalty for the type of rim described in article 15 during the period that he has been making and selling the same. Plaintiff's claim for royalties during the period prior to the appointment of the receiver is a simple contract debt, payable in the same manner as other general debts.

As between the original parties to the license agreement, a case is made such as would entitle the licensor to the injunction prayed for. The right to relief by injunction is well supported by the authorities. See General Elec. Co. v. Westinghouse Elec. Co. (C. C.) 151 F. 664; Indiana Mfg. Co. v. J. I. Case Threshing Mach. Co. (7 C. C. A.) 154 F. 365; Shubert Theatrical Co. v. Rath (2 C. C. A.) 271 F. 827, 20 A. L. R. 846; Thomson Spot Welder Co. v. National Elec. Welder Co. (D. C.) 260 F. 223. This aspect of the case probably becomes immaterial as a

result of the conclusions herein stated relating to other aspects of the case. Thirty days will be given the defendant within which to determine whether the license agreement shall be disavowed, obtain approval of such disavowal from the court having administrative charge of the receivership, and notify plaintiff of its renunciation. In the event of its failure so to do, an injunction will be awarded as prayed. If the parties cannot agree upon the compensation to be made in accordance with the principles herein announced, a special master will be appointed to state an account.