**MALL TOOL CO. v. STERLING VARNISH CO. et al.**

Civ. 8863.

United States District Court
W. D. Pennsylvania.

Aug. 25, 1952.

See also, D.C., 11 F.R.D. 576.

John E. Hughes, Chicago, Ill., & Green, McCallister & Miller, Pittsburgh, Pa., for plaintiff.

Walter J. Blenko, Blenko, Hoopes, Leonard & Glenn, Pittsburgh, Pa., for Blaw-Knox.

Carl E. Glock, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Sterling.

STEWART, District Judge.

Plaintiff brought this action primarily seeking a declaratory judgment to the effect that United States Letters Patent Nos. 2,411,180 and 2,417,538 are invalid and that they are not infringed by certain processes used by plaintiff. Defendants filed an answer to the complaint and defendant Blaw-Knox asserted a counterclaim against plaintiff for royalties under a license agreement allegedly covering these patents. Subsequently, defendants filed a motion pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C. for a separate trial on the issues:

(1) Whether the plaintiff is a licensee under the "Zanderoll" process and patents; and

(2) Whether the defendants, or either of them, have exploited said patents in a manner which is contrary to the provisions of the anti-trust laws of the United States.

Being convinced that a determination of these issues preliminarily would be in furtherance of convenience in view of the decision of the Supreme Court of the United States in Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc., 1950, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, to the effect that a licensee may not challenge the validity of the licensed patent in the absence of a showing of a misuse of patents by licensor or of practices contrary to public policy, we granted defendants' motion and ordered a separate trial of the issues as requested. These two issues were tried by this Court sitting without a jury, and upon all the evidence, we make the following

### Findings of Fact

1. Mall Tool Company (hereinafter referred to as "Mall") is an Illinois corporation and has its place of business at Chicago, Illinois.

2. The Sterling Varnish Company (hereinafter referred to as "Sterling") is a Pennsylvania corporation and has its place of business at Haysville, Pennsylvania.

3. Blaw-Knox Company (hereinafter referred to as "Blaw-Knox") is a New Jersey corporation and has its place of business at Pittsburgh, Pennsylvania.

4. Petition No. 516,241 was filed December 30, 1943 with the United States Patent Office on behalf of Don F. Alexander, and on November 19, 1946, United States Letters Patent No. 2,411,180 was granted thereon. This patent was assigned by Don F. Alexander to the defendant Sterling.

5. Petition No. 659,151 was filed April 2, 1946 with the United States Patent Office on behalf of Don F. Alexander and on March 18, 1947, United States Letters Patent No. 2,417,538 was granted thereon. This patent was assigned by Don F. Alexander to the defendant Sterling.

6. Both of these patents relate to an improvement process in varnishing armatures and the like, said process being commonly referred to as the Zanderoll Process. Patent application 659,151, as stated therein, is a "continuation-in-part" of patent application 516,241. Patent No. 2,417,538 represents an improvement on patent No. 2,411,180.

7. Prior to October 15, 1946, Sterling granted to Blaw-Knox the right to grant sublicenses to others to employ the process disclosed in patent applications Nos. 516,241 and 659,151 and any letters patent issued thereon and any divisions, continuations, renewals, re-issues or extensions of said applications and any patentable improvements thereon.

8. On October 15, 1946, Blaw-Knox and Mall entered into a license agreement by which Blaw-Knox granted to Mall the right to use the Zanderoll process.

9. This agreement was intended to and did have a scope sufficiently broad to cover the process as disclosed in both patent Nos. 2,411,180 and 2,417,538 which were subsequently granted by the United States Patent Office.

10. The last act in the completion of this license agreement was performed in Pennsylvania.

11. This license agreement has never been terminated or cancelled by agreement of the parties thereto.

12. This license agreement has never been repudiated by Mall.

13. Mall has never notified Blaw-Knox of a repudiation of the license agreement.

14. At no time prior to this action, did Mall ever assert to Sterling or Blaw-Knox that Mall considered the Zanderoll process patents to be invalid, or that it had the right to practice the Zanderoll process without a license agreement, or that it did not recognize the binding force of the license agreement of October 15, 1946, or that it had the legal right to terminate the license agreement of October 15, 1946.

15. At the time the license agreement was entered into, Mall purchased from Blaw-Knox a machine useful in the practice of the Zanderoll process. Blaw-Knox was not the sole manufacturer of such machines and Mall purchased its machine from Blaw-Knox for reasons unrelated to the license agreement.

16. Neither Sterling nor Blaw-Knox imposed any condition on the granting of the license to Mall requiring Mall to purchase equipment or supplies useful in practicing the Zanderoll process from Blaw-Knox or any other designated source.

17. There is no evidence that Sterling and Blaw-Knox, or either of them, have exploited or misused patents Nos. 2,411,180 and 2,417,538, or either of them, in a manner which is contrary to the provisions of the anti-trust laws of the United States or to public policy.

### Conclusions of Law

1. This Court has jurisdiction of the subject matter of this action by virtue

of Sections 1332, 1338 and 2201 of Title 28 of the United States Code.

2. This Court has jurisdiction of the parties.

3. The license agreement of October 15, 1946 is valid and remains in full force and effect.

4. Mall is a licensee under the Zanderoll process as disclosed in patents Nos. 2,411,-180 and 2,417,538.

5. Neither Sterling nor its agent Blaw-Knox has exploited or misused either patent 2,411,180 or patent 2,417,538 in any manner contrary to the anti-trust laws of the United States or to public policy.

6. Therefore, Mall may not challenge the validity of the licensed patents in suit. Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc., supra.

## Discussion

This case raises three main issues: (1) whether the license agreement includes in its scope patent No. 2,417,538; (2) whether Mall ever repudiated the license agreement; and (3) whether the defendants or either of them have exploited or misused the Zanderoll patents in a manner which is contrary to the provisions of the anti-trust laws of the United States or to public policy. Although all of the questions are primarily ones of fact, we think that some additional discussion is required.

## I.

Plaintiff argues that the license agreement specifically refers to patent application No. 516,241 and therefore only covers the patent granted on this application, being patent No. 2,411,180. Further plaintiff argues that patent No. 2,417,538 is not covered by the license agreement since it was issued after the date of the agreement and that the contract procedure [1]

for the inclusion of after acquired inventions was never followed.

In the first place, patent No. 2,417,538 is no more an after acquired invention than is patent No. 2,411,180. Both were granted subsequent to the completion of the license agreement. The application for both was pending on the date of the completion of the license agreement. We conclude, therefore, that paragraph 2 is not applicable to patent No. 2,417,538.

The sole difference in the circumstances relating to the two patents is that only one of the applications is referred to specifically in the contract. We think that this circumstance does not limit the scope of the contract to the patent granted on that application. The whole language of the contract refers to the Zanderoll process and application No. 516,241 is referred to merely as a means of defining the process licensed.[2] Both patents relate to this process. In fact a comparison of the two patents shows that there is a basic disclosure common to both of them. In other words, the invention claimed in patent 2,417,538, as well as that in patent 2,411,180, is disclosed in the application specifically referred to in the contract.

Further, plaintiff's position is somewhat inconsistent in this regard. On one hand, it argues that the license agreement does not include patent 2,417,538 within its scope. On the other, it argues that defendants have misused this patent by requiring it to purchase a machine to use the process disclosed in that patent, or by making the purchase of the machine contingent upon the acquiring of a license to use patent No. 2,417,538. The whole import of the interrogatories submitted to defendants and their answers thereto which were offered in evidence by plaintiff indicates that plaintiff

---

1. "2. Blaw-Knox agrees that if after the date of this agreement Blaw-Knox acquires any invention or any transferable right in or license under any invention constituting an improvement on the process claimed in said Application Serial No. 516,241, or is notified by The Sterling Varnish Company of any such invention or transferable right therein acquired by that company, Blaw-Knox will promptly notify Licensee thereof in

writing, and upon Licensee's written request Blaw-Knox will extend the license granted in Paragraph 1 hereof to any such improvement the same as if it were originally identified in this agreement."

2. See United States v. Harvey Steel Co., 1905, 196 U.S. 310, 25 S.Ct. 240, 49 L.Ed. 492, where Mr. Justice Holmes, speaking for the Court, applied a similar construction to a *process* license.

and defendants believed that both patents were included in the license.[3]

## II.

Relying on the decision in Universal Rim Co. v. Scott, D.C.N.D.Ohio 1922, 21 F.2d 346, plaintiff argues that even if the license agreement be construed to cover both patents, it may still attack the validity of the patent since it repudiated the license agreement and gave notice of this repudiation to defendant Blaw-Knox. The cited case

3. The following are some of these typical interrogatories directed to defendant Blaw-Knox and its answers thereto:

"26. Does defendant, Blaw-Knox Company, either directly or indirectly, now have or has it ever had any right, title and/or interest in, to or under Letters Patent No. 2,417,538? A. Yes; Blaw-Knox has heretofore enjoyed certain rights as agent to sublicense the right to others to practice the invention of Letters Patent No. 2,417,538.

"28. Has defendant, Blaw-Knox Company, ever manufactured, sold and/or leased or does it now manufacture, sell and/or lease apparatus or equipment designed for or fitted to the practice of the alleged invention of Letters Patent No. 2,417,538? A. Yes; Blaw-Knox manufactured and sold apparatus and equipment useful in the rotative practice of the invention of Letters Patent No. 2,417,538 until about December 31, 1947, and, thereafter, its aforesaid wholly-owned subsidiary manufactured and sold such apparatus and equipment. Neither Blaw-Knox nor its aforesaid wholly-owned subsidiary currently are manufacturing or have any orders for the manufacture of such apparatus and equipment. Neither Blaw-Knox nor its aforesaid wholly-owned subsidiary has ever leased any such apparatus or equipment.

"31. If Interrogatory No. 28 is answered in the affirmative, please state whether defendant, Blaw-Knox Company, has ever sold or leased any such apparatus or equipment without the purchaser being granted a license under Letters Patent No. 2,417,538. A. While none of the sales referred to in the answer to Interrogatory No. 28 were contingent upon the taking of a license under Letters Patent No. 2,417,538, each ultimate purchaser so far as Blaw-Knox is aware has acquired a license entitling such purchaser to practice the invention of Letters Patent No. 2,417,538.

"32. If Interrogatory No. 31 is answered in the affirmative, please give the names and addresses of all such purchasers or lessees not licensed under the Letters Patent No. 2,417,538 and the terms and dates of all such sales or leases. A. No answer required in view of the answer to Interrogatory No. 31.

"34. If Interrogatory No. 28 is answered in the affirmative, are or were such manufacture, sales and/or leases under any license, agreement or understanding with the defendant, Blaw-Knox Company, respecting Letters Patent No. 2,417,538? A. The manufacture and sale by Blaw-Knox and its aforesaid wholly-owned subsidiary, in any case within their knowledge, of apparatus and equipment useful in the rotative practice of the invention of Letters Patent No. 2,417,538 were in accordance with manufacturing and purchasing arrangements made with the respective purchasers of such apparatus and equipment but were not contingent upon such purchasers having or acquiring a license entitling them to practice the invention of Letters Patent No. 2,417,538.

"42. Has Blaw-Knox Company ever, in its own name, granted any person, firm or corporation a license under Letters Patent No. 2,417,538 without selling or leasing such person, firm or corporation apparatus or equipment for the practice of the alleged invention of Letters Patent No. 2,417,538? A. While every purchaser which has acquired a sublicense from Blaw-Knox in its own name for the right to practice the invention of Letters Patent No. 2,417,538 has also purchased apparatus and equipment useful in the rotative practice of the invention of Letters Patent No. 2,417,538, the acquisition of such sublicense by such purchaser was not contingent upon the purchase of such apparatus and equipment.

"46. Give the names and addresses of all parties who have been licensed under Letters Patent No. 2,417,538 by or with the consent of defendant, Blaw-Knox Company, or in which Blaw-Knox Company has an interest. A. Such names and addresses are as follows:

| | |
|---|---|
| Airway Electric Appliance Corp. | Toledo, Ohio |
| Automatic Control Engineers, Inc. | Bedford, Indiana |
| Bodine Electric Co. | Chicago, Ill. |
| Burroughs Adding Machine Co. | Detroit, Michigan |
| Clarke Sanding Machine Co. | Muskegon, Michigan |
| Dumore Co., The | Racine, Wisc. |

does stand for the proposition "that the licensee, whenever he ascertains that the patents covered by the license agreement are invalid, may refuse to be further bound thereby, and, upon repudiation and notice, may thereafter defend against an action for royalties or an infringement suit as freely as may a stranger." 21 F.2d at page 348.

Without deciding whether this is a correct proposition of law, we conclude that plaintiff's position cannot be sustained since plaintiff did not establish any repudiation after its ascertainment of invalidity of the patents or that it ever notified defendants of any such repudiation. The letters relied on by plaintiff to establish these facts do not have such effect.

### III.

Finally, with respect to the third question, there is no evidence of any misuse of the patents. Plaintiff's own evidence, being the interrogatories and the answers thereto, clearly support the contrary position. Plaintiff attempts to support its position by an inference from the answer of defendants to certain interrogatories to the effect that each purchaser of equipment useful in the practice of the Zanderoll process has acquired a license and that, vice versa, each sublicensee from Blaw-Knox purchased such equipment from Blaw-Knox. However, these same answers to the interrogatories, offered by plaintiff, specifically state that the purchase of equipment from them was not contingent upon the taking of a license, and, vice versa, that the granting of a license was not contingent upon the purchase of equipment. Obviously, this does not establish plaintiff's contention. Furthermore, the president of

plaintiff company testified that he could have purchased the machine from another company but elected to purchase it from defendant Blaw-Knox for the reason that defendant Blaw-Knox could make quick delivery whereas the other company could not. Certainly this supports a conclusion contrary to that urged on us by plaintiff. Finally, none of the evidence presented by plaintiff supports its contention in this regard.

Accordingly, an order estopping plaintiff from challenging the validity of patents Nos. 2,411,180 and 2,417,538 will be entered.

| | |
|---|---|
| Eclipse-Pioneer Division of Bendix Aviation Corp. | Teterboro, N. J. |
| Fairchild Camera & Instrument Co. | Jamaica, N. Y. |
| Fidelity Electric Co., The | Lancaster, Pa. |
| General Electric Co. | Schenectady, N. Y. |
| Hoover Co., The | N. Canton, Ohio |
| Ilg Electric Ventilating Co. | Chicago, Ill. |
| Jack & Heintz Precision Industries, Inc. | Cleveland, Ohio |
| Justowriter Corp. | Rochester, N. Y. |
| Lamb Electric Co. | Kent, Ohio |
| Landers, Frary & Clark | New Britain, Conn. |
| Leland Electric Co. | Dayton, Ohio |
| Mall Tool Company | Chicago, Ill. |
| Martin-Parry Corp. | Toledo, Ohio |
| Reliance Electric & Eng'g. Co. | Cleveland, Ohio" |

Interrogatories 65, 66, 70 and 74 directed to defendant Sterling, and its answers thereto, are of like import.