## LATHROP v. OAKES & BURGER CO., Inc. (two cases).

### Nos. 201, 331.

District Court, W. D. New York.

Nov. 15, 1933.

Joshua R. H. Potts, of Chicago, Ill. (Eugene Vincent Clarke, Basel H. Brune, and Howard S. Laughlin, all of Chicago, Ill., of counsel), for plaintiff.

John S. Powers, of Buffalo, N. Y. (Harold I. Popp and E. Bernard Gary, both of Buffalo, N. Y., of counsel), for defendant.

ADLER, District Judge.

These two suits have been tried together. They are both patent infringement suits and each of the twelve patents involved relate to milk can washing machinery or to a process therefor. The patents in suit and the claims alleged to be infringed are as follows:

First Suit.

Patent No. 1,172,808 granted February 22, 1916, to Lathrop and Paulson. Claims 4, 5, 6, 7, 8, 9.

Patent No. 1,247,692 granted November 27, 1917, to Lathrop and Paulson. Claims 1, 2, 3, 7, 8, 9.

Patent No. 1,249,129 granted December 4, 1917, to Lathrop and Paulson. Claims 1, 2, 3, 4, 6, 7, 8.

Patent No. 1,249,130 granted December 4, 1917, to Lathrop and Paulson. Claims 4, 5, 6.

Patent No. 1,255,896 granted February 12, 1918, to Lathrop and Paulson. Claims 1, 2, 3, 4, 5.

Patent No. 1,336,570 granted April 13, 1920, to Lathrop and Paulson. Claims 1, 2, 12, 13, 14.

Patent No. 1,336,567 granted April 13, 1920, to Lathrop and Paulson. Claim 1.

Patent No. 1,396,516 granted November 8, 1921, to McEwan. Claims 1, 2.

Patent No. 1,578,451 granted March 30, 1926, to McEwan. Claims 1, 2, 3, 4, 5.

Patent No. 1,649,073 granted November 15, 1927, to McEwan. Claim 1.

Second Suit.

Patent No. 1,094,785 granted April 28, 1914, to Green. Claims 1, 2, 3, 4, 5, 6, 7.

Patent No. 1,249,129 granted December 4, 1917, to Lathrop and Paulson. Claim 8.

Patent No. 1,249,130 granted December 4, 1917, to Lathrop and Paulson. Claims 4, 5, 6.

Patent No. 1,255,896 granted February 12, 1918, to Lathrop and Paulson. Claims 4, 5.

Patent No. 1,653,219 granted December 20, 1927, to Lathrop. Claims 1, 2, 3, 4, 5.

The first suit concerns a so-called straightaway type of can washing machine in which cans in inverted position are put through a machine by intermittent movement, during which the cans are successively rinsed, cleaned, sterilized, and dried, and after which they are reversed to upright position and covers applied to them that have been advanced through the machine with the cans, so that a cover has been brought into position from which it can be placed onto a can automatically, after the can has been reversed into an upright position.

The second suit concerns a can washing machine of the rotary type in which the cans (in inverted position) and the covers are placed on a horizontally rotatable carriage, which is inclosed and provided with an opening through which the cans and covers are introduced and removed. In this machine also cans and covers are rinsed, cleaned, and dried, but no provision is made for reversing the cans or for applying the covers automatically, as in the straightaway machine.

In general the patents cover "successive inventions and improvements in the machines or apparatus for use in the mechanical and automatic handling of milk cans and covers in dairies, creameries and the like, during and following the mechanical washing, sterilizing and drying of the cans and covers, after the milk has been dumped into a receiving vat or tank." (Plaintiff's brief.)

Referring first to defendant's straightaway machine on which it has been sued, it appears that the machine of the defendant is a can washing machine in which cans and covers are put through the machine by intermittent movement, during which the cans are successively rinsed, cleaned, sterilized, and dried, and after which they are reversed to upright position, and covers are applied to them that have been advanced through the machine with the cans, so that a cover has been brought into position from which it can be placed onto a can, after the can has been reversed into an upright position, but that the guides on which the can and covers are respectively advanced

in defendant's machine are positioned in different relation to each other in defendant's machine from their relation to each other in plaintiff's patents on the straightaway type of machine, and that the mechanism of the patents whereby the covers are placed upon the cans is not the same as the mechanism employed for that purpose in defendant's machine, as will be pointed out.

Defendant's straightaway machine is shown by charts, Plaintiff's Exhibits 8–12, inclusive, and charts introduced by defendant as Exhibits 93 and 93A. The same reference numerals are used on both sets of charts. The following is a brief description of defendant's straightaway machine by the functions that it is called upon to perform; the reference numerals of the chart being used to identify the parts. The cans are moved intermittently along tracks or guides 17 by reciprocating dog bars 22 on which are pivotally mounted dogs or pawls 23, that are balanced so as to assume normally a position to engage the cans, but will pass freely under the can on rearward movement of the dog bar 22. In the same way covers are moved along a guide rail 20 by dogs 29 on a dog bar 26. These dog bars 22 and 26 are connected together at the discharge end of the machine by a transverse bar 42. As the can is moved along the track 17 by the dogs 23 and comes to its first stop, it operates a cold water valve 61 so that the can receives a preliminary rinsing. In the next position of the can on the track 17 it is treated internally and externally with a soda solution from nozzles 77 and 79, and in its next position it is treated with hot water from nozzles 114. On assuming other positions on the track 17, a mixture of hot water and steam is discharged against both the can and cover, after which they are sterilized by steam. And, finally, the can and cover is subjected to a discharge of hot air to dry them. From the track 17 the can is delivered to a reversing cradle 154, and at the same time, by the action of the cradle that holds the cans, the cover is delivered to a receiving member 159 operatively connected with the can reversing cradle, whereby the cover is delivered to an inclined platform 165 where it rests temporarily right side up ready to be released automatically when the can reaches a position to receive it, when it slides by gravity in a forward direction and falls onto the neck of the can. After the can has been reversed and deposited right side up on a track 174, it is moved by dogs 173 to the end of the track from which it is pushed onto a roller conveyer 175.

Claims 4–9, inclusive, of Patent No. 1,172,808, are alleged to be infringed by defendant's straightaway machine. These claims describe in terms that are broad the combination with a main can guide, a can discharge platform, and a can reversing rack, of a cushioning device on an inclined discharge platform adapted to receive the can. The cushioning device of the disclosure is in the form of a pivoted plate, held normally by a weight in position above the platform on which the can is deposited after having been reversed into upright position. The parts of defendant's straightaway machine claimed to correspond with this cushioning device are the pawls 173 whose function it is to place the cans onto a discharge platform. Any cushioning effect for which the pawls 173 are responsible is casual, incidental, inadequate, and, therefore, immaterial, and claims 4–8, inclusive, are not infringed. Claim 9 is drawn on the minor feature of a roller 52 on the end of the can reversing rack for the double purpose of preventing the can from sliding out of the rack while being reversed and overcoming any friction that might retain the can within the rack, after the rack has completed its rotary movement. In defendant's straightaway machine there is a lip 154B that serves the purpose first mentioned, as an obvious mechanical expedient. If claim 9 can be sustained, it must be limited to the specific device, which is a roller. Therefore claim 9 is not infringed.

Claims 1, 2, 3, 4, 6, 7, and 8 of Patent No. 1,249,129 are also alleged to be infringed by defendant's straightaway machine. The distinctive feature of claims 1, 2, 3, 4, 6, and 7 is the mechanism for performing the function of applying a cover to a can after it has been reversed and placed on the discharge guide or platform. In these claims 1, 2, 3, 4, 6, and 7 a mechanism is called for that is operated by the can in its passage along said discharge guide. In defendant's straightaway machine the cover releasing and applying mechanism is not actuated by the can, but positively by the driving mechanism. Claims 1, 2, 3, 4, 6, and 7 are not infringed. The mechanism described in claim 8 includes as essential elements, valves for controlling the supply of fluid for cleansing the cans and covers, and means for actuating said valves simultaneously with the can and cover moving members. Means for simultaneously actuating said valves and said can and cover moving members are not found in defendant's machine. Claim 8 is not infringed.

Claims 1, 2, 3, 7, 8, and 9 of Patent No

1,247,692 are also alleged to be infringed by defendant's straightaway machine. The distinctive feature of claims 1 and 2 is mechanism described in different terms but performing the function of receiving a cover from the cover-guide and depositing it on a can. In claim 1 this element is described as comprising "a pair of vertically movable members between which the cover is adapted to slide." In claim 2 these members are described as "swingingly mounted," and as "normally assuming a downwardly inclined position," and as provided with means for holding said members in elevated position to arrest the movement of a cover positioned between them and for releasing them at a predetermined time in order to permit them to swing downwardly and release the cover. In claims 7, 8, and 9 the guides for the cans and covers are described as inclined so that the cans and covers slide down them by gravity. These claims also describe in broad terms the means employed for arresting them while a cover is above a can, and for guiding the cover from the cover-guide and depositing it on the can when the can and cover are released. In the specification the vertically movable members between which a cover is adapted to slide are the plates 36 and 41, which are adapted to release a cover by pivotal movement of the plate 41. In guiding the cover onto the can plate 41 cooperates with plate 36. In defendant's straightaway machine the cans and covers are advanced through the machine by corresponding step-by-step movements. The cover is delivered from the washing machine onto a forwardly inclined platform 165, where it is arrested by a detent 168. When the detent 168 is raised by positive action, so as to release the cover, the latter slides by gravity from the platform 165 onto the can and no guides are employed to perform the functions of the plates 31 and 41 of this patent. The mechanism described in the patent is not adapted to serve the purpose of transferring a cover from a cover-guide located alongside the can-guide on which the covers are supported on their rims, as in defendant's machine, and the mechanism employed in defendant's machine could not be used in the machine of plaintiff's patent where the cover-guide is located over the can-guide. Accordingly claims 1, 2, 3, 7, 8, and 9 are not infringed.

Claims 4, 5, and 6 of Patent No. 1,249,130 are also alleged to be infringed by defendant's straightaway machine. It appears from the file wrappers that when filed the application on which this patent issued contained two sets of claims, one on the conveying mechanism, the other on the washing mechanism. Also that the claims retained were drawn on a machine of a type in which the covers are located above the can-guides, an arrangement favorable to the utilization of the cleansing fluid dripping from the covers for cleansing the exterior of the cans (see claims 4 and 5 of Patent No. 1,255,896, issued as a division of this patent). The distinctive feature of said claims, 4, 5, and 6 is described in the claims as follows, namely: "a rigid connection between said series of engaging devices for effecting unisonous movement thereof, substantially as described" (claim 4); "means extending between and rigidly connecting said elements for effecting unisonous movement thereof, substantially as described" (claim 5); and "an operative connection between said series of engaging devices for effecting unisonous movement thereof, substantially as described" (claim 6). All three of the claims expressly describe a machine that "comprises superposed can and cover guides; (and) means for individually and intermittently moving said cans and covers simultaneously along said guides, said means comprising two series of reciprocating spaced engaging devices adapted for engagement with the cans and covers." Except for the fact that in defendant's machine the cover-guide is located alongside the can-guide and not over it, so that these guides are "superposed," as described in the claims, all three claims read on defendant's structure.

The question is whether plaintiff in this patent has disclosed means "for effecting unisonous movement" of the parts by a rigid connection between the can and cover engaging devices, that defendant has appropriated. In the machine of the patent this is accomplished as follows: Pawls adapted to engage and move the cans are pivotally arranged along reciprocatory bars 18 arranged alongside the lower guide rail 17. Another set of pawls carried by a reciprocatory bar 23, arranged between the upper guide rails 17, serves to feed the covers. These two feed mechanisms are connected together for simultaneous operation by vertical bars 28, attached rigidly to the bars 18 and 23 at their rear ends, and stops cooperate with the pawls for limiting the movement. The operating bars are operated manually by a lever 29 fulcrumed at 30 by means of the following mechanism, namely, an arm 31 of the lever 29 projects beyond the fulcrum 30 and extends upwardly for connection through the link 32 with the rocker arm 33, pivoted at 34 to the

frame 15. The upper end of said rocker arm 33 is connected with an arm 35, that is pivotally mounted on an element 36, that is mounted to slide between guide bars 37. Finally, arm 35 is connected with the connecting bars 38 which rigidly connect the rear ends of the feed bars 18 and 23. In defendant's straightaway machine the feeding mechanism is power driven for continuous operation, and the cover-guide is located alongside the can-guide. The pawls 25¹ for engaging and moving the cans are pivoted to reciprocating bars 22 and the latter are located alongside the guide 17. The other set of pawls 29 for engaging and advancing the covers, is carried by the reciprocating bar 26. The reciprocating bar 22 for the cans is level with the bar 26 for the covers and they are connected at the discharge end of the machine by the transverse bar 42. This operating bar 42 is operated by an electric motor 44 through the following connections, namely, link 56, lever 53 pivoted at 54, roller 55, camway 52 on disc 57 on shaft 50 that has gearing connection with a horizontally extending, horizontal drive shaft 45 coupled to the motor 44. Taking into consideration the difference in the organization of the machines (in defendant's machine the can and guide covers being located side by side and in plaintiff's machine being superposed), and the fact that the machine of the patent is manually driven whereas defendant's machine is power driven, the ultimate question is, whether the operating mechanisms compared above perform the same function in the same way, so that in the disclosure of the patent defendant had available for his purposes, a complete disclosure of an intermittently operated mechanism, for simultaneously feeding cans and covers in unison, suitable for a machine that is power driven and has its cover-guides arranged side by side instead of being superposed, as shown and described in the patent. The file wrapper contains an original claim in which the elements are described as,

"Comprising a guide for the objects to be cleaned; and means for individually and intermittently moving the objects along said guide, said means comprising a plurality of spaced pivotally mounted engaging devices for unisonous reciprocatory movement, substantially as described."

This original claim was rejected and canceled. The three claims in suit are distinguished from this rejected claim in that they call for can and cover-guides that are superposed, so as to make possible the washing of the covers and the outside of the cans in the manner described in the patent in detail, and covered in patent No. 1,255,896, that issued on the divisional application. To ignore the explicit restriction of these claims to a machine in which the guides are superposed would be to give the plaintiff a monopoly on both types of machine (though the primary purpose of the construction was to make it possible to use the water from the covers to wash the outside of the cans beneath them), because a minor structural feature that is obviously necessary for any arrangement of separate guides when the objects are to be moved in unison, is made use of in defendant's machine. Accordingly it is held that claims 4, 5, and 6 are not infringed.

Claims 1, 2, 3, 4, and 5 of Patent No. 1,255,896 are also alleged to be infringed by defendant's straightaway machine. This patent was granted on a division of the application on which was granted the patent last discussed (No. 1,249,130). It was filed in order to claim washing mechanism held by the patent office to constitute a distinct and independent invention from that of claims proper to the specific conveying mechanism of these applications. Claims 1, 2, and 3 are on valve control mechanism and claims 4 and 5 are on means for utilizing the cleansing fluid for cleansing the outside of the cans after it has been used to spray the covers. Claim 1 calls for a combination of mechanism for feeding intermittently objects to be cleaned with means for spraying the object when it reaches a position where the spraying means is located.

(a) A valve (24) governing the discharge of fluid towards the object; (b) a movable element (the lever 26) for operating said valve; (c) means (the rod 31) for actuating said movable element (26), these parts (b) and (c) being normally "out of operative relation"; and (d) means (the front end of the lever 36) for moving the element (b) so that it will be operated when the can arrives in position to receive the discharge.

In defendant's machine the valves are positively actuated by direct engagement by the neck of the can with the valve lever, so that elements (e) and (d) are lacking. The difference in the requirements of a hand operated machine and a power driven machine, and the difference in organization with respect to the relative positions of the can-guide and cover-guide, called for different valve-operating mechanism, as seen on comparing defendant's mechanism for this purpose with that of the patent. Claims 1, 2, and 3 are not infringed. Claims 4 and 5 are drawn on means

for using the cleansing fluid over again when the cover-guide is located above the can-guide, so as to make it possible to utilize the drippings from the covers to spray the outside of the cans. As explained above, the can and cover guides are not so arranged in defendant's machine. Claims 4 and 5 are not infringed.

Claim 1 of Patent No. 1,336,567 is also alleged to be infringed by defendant's straightaway machine. This claim calls for a can reversing mechanism, comprising (1) an oscillatory cradle adapted to receive and reverse a can, (2) means for actuating the same, comprising an oscillatory arm, (3) a reciprocatory bar adapted to rock said arm, (4) a shoulder on the arm adapted to engage with the reciprocatory bar to lock it in can reversed position. The distinctive feature is the shoulder $25^1$, designed to retain the cradle in can-reversed position until by use of the hand lever 13 the actuating bar has begun to return the cradle to the position where it receives the can. Defendant's machine is positively driven by power, and because of fundamental structural differences has no need for a part corresponding in function to said shoulders. The claim is not infringed.

Claims 1 and 2 of Patent No. 1,396,516 are also alleged to be infringed by defendant's straightaway machine. The novelty consists in substituting a fork 12 for the shoulder $25^1$, referred to above as the distinctive feature of patent No. 1,336,567. As pointed out in the discussion of the other patent, defendant's machine is actuated by positive connections with a source of power. In plaintiff's machine there is a tendency for the saddle or cradle 4 to continue its motion under gravity and momentum, so that the can will be delivered violently, unless provided against. The fork 12 is designed to prevent this by engagement with the roller 13. In defendant's, obviously, such provision is absent and unnecessary. Claims 1 and 2 are not infringed.

Plaintiff has asked permission to withdraw patents Nos. 1,444,925 and 1,525,304. They are eliminated.

Claims 1–5, inclusive, of Patent No. 1,578,451 are also alleged to be infringed by defendant's straightaway machine. It is sufficient to state, without going into detail, that there is no such resemblance in construction or operation between the mechanism of this patent and that of defendant's machine as to make it possible to maintain infringement of any of these claims. They are not infringed.

Claim 1 of Patent No. 1,649,073 is also alleged to be infringed by defendant's straightaway machine. This claim describes a platform on which the can is deposited after having been turned right side up, characterized by rollers and a stationary side-bar on which the can lands. These features are absent from defendant's machine. The claim is not infringed.

It is also alleged that defendant's straightaway machine infringes claims 1, 2, 12, 13, and 14 of Patent No. 1,336,570. The distinctive feature of claims 1 and 2 is a combination in a can washing machine with means for intermittently feeding the cans of (a) means adapted for operation by a can in traveling through the machine for starting operation of said can feeding means and (b) automatic means for stopping said feeding means after one feeding operation, substantially as described. This principle of operation has not been adopted in defendant's straightaway machine. In defendant's machine there is continuous operation of the mechanism by which the motor operates the feeding means, whereas in the machine of this patent provision is made for stopping the feeding mechanism after each step in the cleansing operation until another can has been put into the machine. Claims 1 and 2 are not infringed. Claims 12, 13, and 14 are drawn on a machine of the type described in the patent in which the can cover-guide is located above the can support and cans and covers are intermittently advanced along their respective guides. In defendant's machine the cover-guide is not placed above the guide for the can, as has been pointed out in discussing the alleged infringement of other patents also involved in this suit. In claim 14 this cover-guide is explicitly described as located above the can-guide, but in claims 13 and 14 the relative locations of the can and cover guides are not specified. Claim 12 includes also an element described as, "automatically retracting stops limiting the extent of insertion of articles onto said supports (the can and cover guides)."

Claim 13 includes elements described as, "Means, set in the path of a can entering said machine and operable by said can, for starting operation of said can and can cover feeding means, and automatic means for stopping said feeding means after one feeding operation."

And claim 14 includes elements described as, "A reciprocating carriage operating said can and said cover feeding means, automatically retracting steps limiting the extent of insertion of a can or cover into said machine; a lever, set in the path of a can entering said

machine and operable by said can; a can carried by said lever; and a clutch controlling the reciprocations of said carriage, said clutch being operatively connected with said can, substantially as described."

This mechanism comprises stop arms 47 pivoted at 48 to the sides of the reciprocating carriage 16, extended so as to "limit the extent of insertion of a can to proper position for engagement by the corresponding pawls 11," and adapted to ride upon stationary can blocks 50 secured to the tracks 7. A similar stop for the covers is also provided. Defendant's machine makes no provision either for starting operation of the can and cover feeding mechanism by the can on engaging with means set in the path of the can, or for automatically limiting the extent of insertion of a can or cover into the machine by automatically retracting stops. Claims 12, 13, and 14 are not infringed.

We come now to the question of infringement of certain claims of the six patents on which defendant is sued in Equity Case No. 331, on its rotary machine. The earliest of these patents is No. 1,094,785. All of its seven claims are alleged to be infringed. This patent expired April 28, 1931, so that infringement, if found, can result only in an accounting. The elements claimed in combination are: (a) A chamber for water, having an annular rim with a gateway; (b) a rotary carrier, having supports for the cans; (c) a movable housing on the rim, circumferentially adjustable and open at one side; (d) a cover for the housing; (e) a plurality of radial partitions forming compartments, with water-tight joints at the outer edges; and (f) means for spraying from below cans within the compartments. In defendant's rotary machine there is no element corresponding to or the mechanical equivalent of the element (c) above. This feature is an element in all of the claims. The machine is hand operated, and the housing is made adjustable not only to enable the cans to be inserted, but to make it possible for the operator by grasping a partition wall to rotate the carrier, when the edge of a partition is exposed by the rotation of the housing (specn. pp. 85-99). In defendant's machine the housing 15 is immovable. The rotary carriage is loaded through an opening in the housing and the carriage is power driven. The claims are not infringed.

It is also alleged that claim 8 of Patent No. 1,249,129 is infringed by defendant's rotary machine. The claims of this patent, including the eighth, are drawn on a machine of the straightaway type in which the cans and covers are moved intermittently and correspondingly advance the cans and covers along their respective guides for cleansing. It describes a machine of a different order from defendant's rotary machine. Claim 8 is not infringed.

It is also alleged that claims 4, 5, and 6 of Patent No. 1,249,130 are infringed by defendant's machine. These claims have been discussed in connection with defendant's machine of the straightaway type. All three claims were found to be drawn on a machine of the straightaway type in which can and cover-guides are superposed. Defendant's rotary machine bears no resemblance to such a machine. The claims are not infringed.

It is also alleged that claims 4 and 5 of Patent No. 1,255,896 are infringed by defendant's rotary machine. These claims have been considered in connection with defendant's straightaway machine. In defendant's machine the fluid after use is returned to a common supply tank. The claims are not infringed.

Finally, it is alleged that claims 1-5, inclusive, of Patent No. 1,653,219, are infringed by defendant's machine. These claims were allowed over patent to Green also in suit and other patents of the prior art cited by the Examiner, even after applicant had pointed out that the claims were limited to details not shown in the patents cited, "especially in regard to providing a movable hood whereby access may be had to a selected compartment at any place about the washer during the rotation of the section," enabling the attendant to inspect any compartment at any time "to adjust the washing devices and ascertain whether the cans are being properly cleansed." The rotatable hood is an element of all five claims, and it is not found in defendant's machine. Other structural details inserted in these claims to distinguish them from the prior art cited by the Examiner, are not found in defendant's machine. The claims are not infringed.

There are no claims in either of these suits Nos. 201 and 331 that are infringed by either defendant's machine of the so-called straightaway type or by defendant's machine of the rotary type.

Decrees may be entered accordingly.