## LATHROP et al. v. RICE & ADAMS CORPORATION.

### No. 1790–A.

District Court, W. D. New York.

Dec. 24, 1936.

624

Rann, Vaughan, Brown & Sturtevant, of Buffalo, N. Y., and Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill. (Russell Wiles and Horace Dawson, both of Chicago, Ill., and Franklin R. Brown, of Buffalo, N. Y., of counsel), for plaintiffs.

Maloney, Lane & Stengel, of Buffalo, N. Y. (John F. Lane, John S. Powers, and Max Farmer, all of Buffalo, N. Y., of counsel), for defendant.

RIPPEY, District Judge.

Harry D. Lathrop, one of the plaintiffs, is a citizen and resident of Chicago, Ill.; Lathrop-Paulson Company is an Illinois corporation having its principal place of business in Chicago; and the defendant Rice & Adams Corporation is a New York corporation with its principal place of business in Tonawanda, N. Y.

This is an action at law to recover royalties which plaintiffs claim are due to them under a written license agreement duly executed by the parties on September 13, 1929. Jury trial was duly waived and the case was tried before the court without a jury.

For at least ten years past, both parties have been engaged in the manufacture and sale of can-washing machines and dairy equipment. Since January 21, 1925, the plaintiff Harry D. Lathrop and the defendant had been engaged in patent litigation within the Western District of New York, wherein plaintiff asserted that defendant was infringing his patents on can-washing machines. On September 13, 1929, two infringement suits were pending. The first was for infringement of Blair patent, No. 880,713, dated March 3, 1908, Equity Docket No. 793–D. Defendant was unsuccessful and infringement was decreed [Lathrop v. Rice & Adams Corporation (D.C.) 21 F.(2d) 124, affirmed (C.C. A.) 24 F.(2d) 1021, affirmed 278 U.S. 509,

49 S.Ct. 220, 73 L.Ed. 480], and an accounting was pending. The second, Equity Docket No. 1140–F, based on patents 1,172,808, February 22, 1916; 1,247,692, November 22, 1917; 1,249,129, December 4, 1917; 1,249,130, December 4, 1917; 1,-336,567, April 13, 1920; 1,336,570, April 13, 1920; 1,396,516, November 8, 1921; and 1,578,451, March 30, 1926, owned by Lathrop, had not then been tried. The contract here involved recites that "it is the desire of all the parties hereto to settle all litigations now pending between them * * * and to further provide means for preventing future litigation between the parties," and to that end, the defendant agreed to pay, and plaintiffs to accept, $10,000 in settlement for accounting for all past profits and damages and costs and to further pay all costs that had accrued before the master to whom the suit first above mentioned had been referred to take the account, and plaintiffs agreed to license defendant to use their patents in the future. Paragraph 15 of the contract provides that in Equity Suit No. 1140–F, a decree should be entered finding the claims involved in the patents referred to in said suit valid and infringed by the defendant and that "it is hereby conceded that said patents are valid and infringed." A decree to that effect was entered on September 14, 1929, in which it was held (1) that claims 4 and 9 of patent 1,172,808, (2) claims 1, 2, 7, 8, and 9 of patent 1,-247,692, (3) claims 1, 3, 4, 6, 7, and 8 of patent 1,249,129, (4) claims 4, 5, and 6 of patent 1,249,130, (5) claim 1 of patent 1,-336,567, (6) claim 1 of patent 1,336,570, (7) claims 1 and 2 of patent 1,396,516, and (8) claims 1, 2, 3, 4, 5, 7, and 10 of patent 1,578,451, were valid and infringed, and judgment was docketed for plaintiffs for $245 costs. If any of those claims are involved in the present action, the defendant will not be permitted either to show invalidity or that it is not infringing as to any features of its present machines or dairy equipment that were in its machines at the time the contract was entered into. Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065.

When the contract was executed, plaintiffs were the owners of thirty-eight United States patents and seven applications for patents within the United States covering inventions relating to can-washing machines, dairy equipment, and the like, therein described. They are listed in the agreement. Plaintiffs granted to

defendant the right to use inventions covered by such patents and applications, in consideration of the payment to plaintiffs by defendant (1) of a royalty of 7½ per cent. of the selling price öf all Straightaway can-washing machines and of 10 per cent. of the selling price of all Rotary can-washing machines manufactured and sold by defendant from and after June 6, 1929, as long as defendant continued to use any feature covered by any patent then owned or controlled by plaintiffs, or either of them, which royalties were to be based upon the selling price of the entire machine in which any such invention was incorporated, (2) of a royalty of 10 per cent. of the total selling price of any dairy machinery or equipment, other than can-washing machines provided for in (1) above, covered or protected by any patent or patents owned or controlled by plaintiffs, or either of them, except that, where such equipment was sold or became a part of and was attached to a machine previously sold, on which a royalty had been paid, such royalty should be paid on such equipment only at the same rate as paid on the original machine.

The agreement further provided that each party licensed the other to use any future inventions on which patents issued to the several parties in improvements on can-washing machines of all types and/or other dairy equipment, by paying a royalty of 10 per cent. of the selling price thereof to the owner of any such inventions. In addition to the patents enumerated in the. contract, eight patents were issued to Lathrop between January 14, 1930, and June 7, 1932, both inclusive, as set out in paragraph 17 of the complaint, to be considered as within the terms of the agreement.

Defendant agreed to keep a complete, true, and correct record and books of all such machines and equipment manufactured and sold, with the name and address of the purchaser, the date of sale, and the selling price, to render a statement thereof under oath to plaintiffs not later than the 20th day of each January, April, July, and October of each year for the preceding three calendar months, with the royalty due, and to accompany it with a remittance for the amount due. Between September 13, 1929, and April 1, 1934, defendant manufactured and sold approximately 350 Straightaway can-washing machines for which it accounted to plaintiffs at quarterly intervals and on which it paid $16,240.93 in royalties in accordance with the terms of the contract. Royalties amounting to $1,457.80 for the quarter ending March 31, 1934, and accounted for were not paid, however, until July 12, 1934. Defendant rendered an accounting for royalties due for the quarter ending June 30, 1934, amounting to $1,863.46, and for the quarter ending September 30, 1934, amounting to $1,585.95, which became due and payable not later than the 20th day of July and October, 1934, respectively, but has failed to make payment. It has rendered no other statements to plaintiffs and has paid no royalties since March 31, 1934. It at no time asserted that such machines did not contain features covered by the claims in plaintiffs' patents, or that it was not infringing such claims, or that it was not operating under the terms of the license agreement.

Defendant further agreed to attach a name plate to each machine manufactured and sold by it, showing that it was licensed under plaintiffs' patents, naming them. It attached such name plate in accordance with the terms of the contract, not only on each of the 350 machines it sold prior to April 1, 1934, but to each of the machines it made and sold thereafter. Dr. Alling, defendant's president, testified that he decided on February 25, 1934, to no longer attach the name plate to the machines defendant was manufacturing and that he later promulgated a shop order to that effect. The alleged typewritten shop order shows, however, on its face, that it was not approved by Alling until February, 1935, and defendant's sales manager said that all machines that went out before some time in November, 1935, had these name plates attached. It must be found that all Straightaway can-washing machines manufactured and sold by defendant during the period for which it may be required to pay royalties in this suit had such name plates attached.

Defendant seeks, by way of counterclaim, to recover back royalties paid by it prior to December 31, 1934, on the ground, as it asserts, that the can-washing machines and equipment made and sold by it contained no invention covered by plaintiffs' patents and that the royalties paid prior to that date were paid under a misapprehension of the scope of such patents. It is too much to ask us to believe that defendant paid the royalties to plaintiffs under any misapprehension as to the nature and scope of plaintiffs' patents or under

any honest mistake as to infringement thereof. It would hardly have paid the price it did for peace if it had no legal liability. To decide on the question of legal liability for infringement, it had the advantage of the advice of eminent counsel, and its president had such training and mechanical knowledge and intimate knowledge of the patent situation in the industry that he might well rely upon his own judgment without eminent counsel's advice. The record clearly indicates that it knew it was appropriating plaintiffs' inventions in its machines and equipment. The chain it manufactured, it admits, "was a literal reproduction of the construction shown in the patent No. 1,861,642." It admits, in its answer, that it used other of plaintiffs' inventions covered by the contract. For more than five years the defendant used name plates on all machines manufactured and sold by it on which were listed plaintiffs' patents; during this period it accounted for and paid royalties under the contract; it advertised and sold the machines as made under and protected by such patents; it had full knowledge of the patent situation and used what plaintiffs had. It is therefore estopped to deny that the machines and equipment contained the patented improvements of plaintiffs during the life of the patents. Universal Rim Co. v. Scott (D.C.) 21 F.(2d) 346; Andrews v. Landers (C.C.) 72 F. 666; Sproull v. Pratt & Whitney Co. (C.C.) 97 F. 807, affirmed (C.C.A.) 108 F. 963; Baker Oil Tools v. Burch (C.C.A.) 71 F. (2d) 31; Piaget Novelty Co. v. Headley (C.C.A.) 108 F. 870; Collis Co. v. Consolidated Machine Tool Corporation (C.C.A.) 41 F.(2d) 641, 645; Felix v. Scharnweber, 119 Ill. 445, 10 N.E. 16. Even though the patents were entirely invalid, there was adequate continuing consideration to sustain the agreement and to compel defendant to pay royalties until an unequivocal notice of repudiation was given to the licensor. Universal Rim Co. v. Scott, supra; Humphrey v. Sea Gull Specialty Co. (C.C.A.) 242 F. 271; Skinner v. Walter A. Wood M. & R. M. Co., 140 N.Y. 217, 35 N.E. 491, 493, 37 Am.St.Rep. 540; Martin v. New Trinidad Lake Asphalt Co. (D.C.) 255 F. 93. Such being the case, there was no burden on plaintiffs to show that the machines and equipment of defendant contained inventions of plaintiffs. It is conclusively presumed that they did. Had defendant given such a notice of repudiation, it could not there-

after defend itself against the payment of royalties on the ground that the patents were invalid because, there being no stipulation to the contrary in the agreement, it is conclusively presumed that the patents referred to in it are valid according to their respective claims. Ball & Socket Fastener Co. v. Ball Glove Fastening Co. (C.C.A.) 58 F. 818.

■ No unequivocal notice has been given by defendant to the plaintiffs that it was not using the inventions of plaintiffs as covered by the patents set up in the agreement. As is stated in Skinner v. Walter A. Wood M. & R. M. Co., supra: "A licensor is entitled to assume that his licensee remains such until the latter, by a clear, definite, and unequivocal notice, emanating from lawful and competent authority, throws off the protection of the license, and stands admittedly an infringer, if the patent is valid. The licensor is not to be left in a doubtful or uncertain position. He must not be exposed to the double danger of being defeated in a suit for infringement by a plea of license never effectually or authoritatively renounced; or, if he sues for royalties, of being beaten because there was merely an infringement, if anything."

■ The only lawful and competent authority from which a notice could be given was the corporation itself by action of its board of directors, and there is no evidence that the corporation ever acted upon the matter either formally or informally.

■ Defendant claims that it so changed the construction of its machine in 1934 as to exclude every feature covered by every claim of plaintiffs' patents. There is no evidence in the case of any notice whatever of any such change, except the testimony of Alling to the effect that he met Lathrop in the Cleveland Hotel in Cleveland, Ohio, early in February, 1935, and then stated to Lathrop that he was not using any of the Lathrop patents and was not operating under the agreement. Even if that did occur, such oral statement did not amount to such a notice as was required. See, also, Martin v. New Trinidad Lake Asphalt Co. (D.C.) 255 F. 93. Furthermore, the parties themselves agreed in paragraph 21 of the agreement that, to avoid infringement litigation or suits for royalties, if defendant should at any time change the construction of its Straightaway can-washing machine to the

extent that its counsel might advise it that such machine, so modified, did not infringe any patent or patents of plaintiffs, and if such counsel should give an opinion to that effect, it would submit a copy of that opinion to the counsel for the plaintiffs and furnish a complete and accurate set of drawings of the modified machine and place one of such modified machines at the disposal of counsel for the plaintiffs for inspection, and if the parties did not agree they would proceed to arbitration. Thus, the parties deliberately fixed by contract the method by which defendant might relieve itself from payment of royalties if, during the life of plaintiffs' patents, it so changed its machine that it embodied none of the inventions covered by those patents. There is no evidence in this case that any such notice was given or opinion of noninfringement furnished. That plaintiffs thoroughly understood this to be the kind of notice required is clearly indicated from their complaint, because they set this clause up in the complaint and they bring a suit solely for royalties under the contract and not for infringement. The defendant does not plead any such notice or any notice at all. Thus, defendant is not in a position to assert in this case that any machine or other dairy equipment that they are manufacturing and selling was not covered by the plaintiffs' patents.

■ The agreement provided that, should either party grant a license to a third party on any patent or patents owned or controlled by him on such machinery or equipment on more favorable terms than those above named, such more favorable terms should inure to the benefit of the other party to the agreement, and the royalty be reduced accordingly from the date of the granting of such more favorable license. No claim is made in this case that plaintiffs affirmatively granted any license to others than defendant to use their inventions. Rather, complaint is made that, by inaction against various alleged infringers, plaintiffs in effect granted free licenses. In the first place, to establish this defense, the defendant was required to show that the alleged infringers were in reality infringing plaintiffs' patents; otherwise defendant cannot complain that the plaintiffs failed to serve notices on the alleged infringers or to prosecute actions against them. Such evidence as there is fails to establish the existence of any such infringers.

■ The fact is, however, that plaintiffs brought two actions in this district against Oakes & Burger Company, Inc., Equity Suits 201 and 331, for infringement, and suits against the Kendall-Lamar Company and against the Houck Manufacturing Company for infringement and served notices on others. The Houck suit was not pressed. This company quit building can washers shortly after the suit was brought. In the Kendall-Lamar litigation, plaintiffs stipulated that trial should not proceed until final decision was rendered on appeal in the Oakes & Burger suits. But the Kendall-Lamar suits were neither discontinued nor settled, and plaintiffs may proceed with them whenever they wish. In the Oakes & Burger suits, after trial, Judge Adler in this district, on November 15, 1933, held noninfringement, (Lathrop v. Oakes & Burger Co. [D.C.] 5 F.Supp. 70), and a decree was entered on August 13, 1934, dismissing both suits without costs to either party. No appeal was taken by plaintiffs. After the decision, changes were made in the Oakes & Burger machine that removed any question of infringement of plaintiffs' patents, and the possible recovery involved was so small that the expense of appeal was not warranted. In the Oakes & Burger suit, Judge Adler pointed out that the distinctive features in plaintiffs' patent 1,249,130 were not present in the Oakes & Burger machine. Claim 6 of patent 1,249,130 and claim 12 of patent 1,336,570 are here in suit, as they were in the Oakes & Burger Cases. Patent 1,249,130 expired December 4, 1934, and patent 1,336,570 expired April 13, 1935. Nevertheless, in paragraph 15 of the agreement the defendant admits that both patents are valid and are infringed by its machines, which admission binds the defendants regardless of anything involved or done in the Oakes & Burger suits. It must be held in this case that the plaintiffs have granted no licenses to others on terms more favorable than those granted to defendant under the contract in suit.

■ Under paragraphs 10 to 16 of the answer, defendant sets up as a defense failure of consideration in that plaintiffs have violated an oral agreement to prosecute infringers, which oral agreement, it alleges, was the consideration and inducement to defendant to sign the license contract and, under paragraphs 19 to 24 of the answer, counterclaims for damages for loss of sales and ruinous competition. No

effort has been made to cancel or rescind the contract for failure of consideration or for fraud. Both are grounds for rescission. Buffalo Rubber Mfg. Co. v. Batavia Rubber Co., 90 Misc. 418, 153 N.Y.S. 779; Pratt v. Paris Gaslight Co., 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458; Schutte, etc., Co. v. Wheeler Condenser, etc., Co. (D.C.) 295 F. 158. Defendant could succeed on neither ground, because the evidence shows that defendant ratified and affirmed the contract with full knowledge of the facts.

■ There is no sufficient evidence to show that defendant was "influenced, induced, or enticed" to execute the contract by any such oral agreement, if any were made. The main reliance of defendant to show that such a promise was made rests in certain correspondence between counsel for the parties during the negotiations leading up to the execution of the agreement. In a letter dated August 24, 1929, counsel for defendant stated that the bank had "finally approved the settlement in the main details, but is somewhat concerned about whether or not Mr. Lathrop was going to stop, or endeavor to stop, the other infringers," and asked counsel for plaintiffs to give him "some written assurance, which we can show the bank, that he will proceed vigorously against the other infringers, so that Rice & Adams will not be at a disadvantage in competing with the other infringers," and further asked: "Would Mr. Lathrop consent to including this in the agreement?" To this, counsel for plaintiffs replied, under date of August 27, 1929, that Lathrop was "not willing to enter into any written agreement as to the prosecution of other infringers," although it was Lathrop's intention "to prosecute anyone who infringes upon his patent rights." Neither the expression of an opinion, nor a prophecy, nor a statement of future intention, is a fraudulent representation, nor was it alleged or proven that there was any willful intention to deceive. New York Life Ins. Co. v. McMaster (C.C.A.) 87 F. 63.

■ Neither was the question of what Lathrop would do by way of prosecuting others for infringement of his patents the important consideration for the agreement from defendant's viewpoint, or any consideration at all. The motive that moved defendant to execute the agreement was, as expressly stated in the written agreement, to settle all litigations then pending between them, and to further provide means for preventing future litigation between the parties. There is no covenant by plaintiffs in the written agreement that they will protect defendant against infringers. In the absence of such a covenant, there was no obligation on the part of plaintiffs so to do [Martin v. New Trinidad Lake Asphalt Co. (D.C.) 255 F. 93; National Rubber Co. v. Boston Rubber-Shoe Co. (C.C.) 41 F. 48; Standard Button Fastening Co. v. Ellis, 159 Mass. 448, 34 N.E. 682; Martin v. New Trinidad Lake Asphalt Co., 182 App.Div. 719, 160 N.Y.S. 234], and competition presents no defense to an action to recover royalties [Humphrey v. Sea Gull Specialty Co. (C.C.A.) 242 F. 271; Hardwick v. Galbraith, 147 Pa. 333, 23 A. 451].

■ Defendant asserts and has attempted to prove the making of the alleged oral agreement by oral testimony and by the aforesaid correspondence. On contradictory evidence it becomes a question of fact, and I find that no such agreement was made. But, if such an agreement had been made, it was not founded upon a separate good consideration, and was therefore unenforceable. New York Life Ins. Co. v. McMaster (C.C.A.) 87 F. 63. Neither the written agreement nor its execution furnishes any consideration. Furthermore, the alleged oral contract relates to a matter on which the contract speaks and is inconsistent with its clear and certain terms. It thus was not independent of or collateral to the written agreement. It tended to contradict and substantially vary the terms of the written instrument. It must be conclusively presumed that the whole undertaking was embodied in the written instrument. Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 12 S.Ct. 46, 35 L.Ed. 837; Bast v. First National Bank, 101 U.S. 93, 25 L.Ed. 794; Union Selling Co. v. Jones (C.C.A.) 128 F. 672; City of Newark v. Mills (C.C.A.) 35 F.(2d) 110. And, finally, the only way defendant could take advantage of such an agreement, if made, was to abandon the contract upon failure of plaintiffs to prosecute infringers after due notice. Humphrey v. Sea Gull Specialty Co. (C.C.A.) 242 F. 271. It has not abandoned the contract. Such oral agreement, if made, was void under the statute of frauds (Personal Property Law N.Y. [Consol.Laws, c. 41] § 85).

■ This action was commenced on December 23, 1935. No pretense is made

by defendant that it gave any notice of any kind that its machine involved none of plaintiffs' inventions or that it was not required to pay royalties under the agreement until the meeting in Cleveland between Lathrop and Alling in February, 1935. To that date, at least, defendant is conclusively estopped to prove noninfringement. We have held that the statement by Alling to Lathrop was not such a notice as would open the door for proof by defendant of noninfringement. If we are in error in that conclusion, defendant would be permitted to explore the prior art for the purpose only of ascertaining the breadth of the claims of the patents licensed. Chadeloid Chemical Co. v. Charles McAdam Co. (C.C.A.) 298 F. 713, 716. In such exploration, the claims of the licensed patents must be so construed as to allow a reasonable range of equivalents. St. Paul Plow-Works v. Starling, 140 U.S. 184, 195, 11 S.Ct. 803, 35 L.Ed. 404; Baker Oil Tools v. Burch (C.C.A.) 71 F.(2d) 31; Barber Asphalt Pav. Co. v. Headley Good Roads Co. (D.C.) 283 F. 236. If it should be found that defendant used in its machines an equivalent of the invention covered by any claim in any one of the licensed patents according to the contract, even though in a different form, or used a patented process covered by any such claim, although there was a change of apparatus, the defendant would be liable. Eskimo Pie Corporation v. National Ice Cream Co. (D.C.) 20 F.(2d) 1003, affirmed (C.C.A.) 26 F.(2d) 901; Martin v. New Trinidad Lake Asphalt Co., 182 App.Div. 719, 170 N.Y.S. 234.

Under the terms of the contract, the license covered the use not only of the patents specified, but of such other improvements therein on which patents issued to licensor during the continuance of the agreement. Inasmuch as the subject-matter related to the same art, the agreement is for a single license and binds defendant to pay the stipulated royalties on all articles manufactured and sold during such time as any one of such patents remains in force. Sproull v. Pratt & Whitney Co. (C.C.) 97 F. 807, affirmed (C.C.A.) 108 F. 963. By the terms of the contract, defendant is free to use any or all of plaintiffs' patents, but must pay full royalty if it was an invention covered by a single claim in any one of them. Patent No. 1,249,130 expired December 3, 1934, and patent No. 1,262,679 expired April 15, 1935. As to these, the agreement to pay

royalties terminated on the dates of their expiration, for it contained no provision requiring the payment of royalty thereafter. Sproull v. Pratt & Whitney Co., supra.

Defendant asserts that by virtue of the settlement which was made in the Rice & Adams litigation prior to or contemporaneous with the execution of the contract in suit and recitals in the agreement, the defendant has a free license to use any or all of the inventions set out in plaintiffs' patent 1,465,734 and the inventions set out in claim 12 of patent 1,336,-570 in defendant's Straightaway milk-can-washing machines because, in the Rice & Adams litigation, the plaintiffs did not claim infringement thereof and, as to the latter patent, because plaintiffs acquiesced in the decision in Lathrop v. Oakes & Burger Company, Inc. (D.C.) 5 F.Supp. 70. It seeks to show by oral evidence the foregoing facts and exactly what was litigated in those suits. The only competent evidence of what was litigated is the record, and on the question of estoppel the decree is the only competent part of that record, and the only theory on which any such evidence, whether oral or documentary, would be admissible would be on the basis of estoppel or bar. Where a claim of estoppel or bar is made by record, it can only be made by pleading by way of an affirmative defense and competent proof of the record itself. 21 C.J. 1213, 1241; 67 C.J. 9, 10; Walker on Patents (6th Ed.) § 520; Krekeler v. Ritter, 62 N.Y. 372. Estoppel and bar by record was not pleaded here. It cannot be established under a general denial. As previously pointed out, plaintiffs were not required to allege or prove that defendant's machine was infringing their patents. It is presumed that it did so infringe. The foregoing claims are therefore not excluded from consideration.

The only claims or patents brought before the court as involving infringement are (1) claims 1, 2, and 3 of Lathrop-Paulson patent, No. 1,525,304, issued February 3, 1925, on the soda tank and method; (2) claims 16 and 17 of Lathrop patent, No. 1,465,734, issued August 21, 1923, on cover-advancing mechanism; (3) claims 1 to 9, both inclusive, of Lathrop-Paulson patent, No. 1,262,679, issued April 16, 1918, on cover-setting mechanism; (4) claim 5 of Johnson patent, No. 1,470,533, issued October 9, 1925, on can-removing mechanism; (5) claim 12 of Lathrop-

Paulson patent, No. 1,336,570, issued April 13, 1920, on can-and-cover-starting mechanism; (6) claim 6 of Lathrop-Paulson patent, No. 1,249,130, issued December 4, 1917, on feeding mechanism—all in Straightaway machines; and (7) claims 1 to 6, inclusive, of Paulson patent, No. 1,861,642, issued with respect to the combination of the chain and guides therefor for conveyor. The fact that defendant has limited itself to claim of noninfringement of the foregoing does not limit the court in considering, or the plaintiffs from claiming, that royalties are payable under the contract because defendant uses inventions covered by other patents mentioned in the agreement, either in this or in future litigations. Claim for noninfringement will be limited here to consideration of patents and claims referred to in (1), (2), (3), (5), (6), and (7), above leaving the parties to any rights they may have to assert elsewhere as to infringement or noninfringement.

Claim 6 of patent 1,249,130, on feeding mechanism, need not be considered here as applicable to the period subsequent to December 3, 1934, as it then expired. This claim describes a machine with superimposed can and cover guides, means for individually and intermittently moving such cans and covers simultaneously along the can and cover guides comprising two series of reciprocatory spaced engaging devices adapted for engagement with the cans and covers, and an operative connection between said series of engaging devices for effecting unisonous movement thereof. This claim, even considering the limitation placed by the cancellation of claims in the application as disclosed by the file wrapper from the patent office, reads upon defendant's machine (Exhibit 101, A–G), details changing mechanical construction being immaterial. It did not read on the Oakes & Burger machine, for reasons given in Lathrop v. Oakes & Burger Company, Inc. (D.C.) 5 F.Supp. 70, 73, 74. Defendant insists that the narrow and limited construction of the claim by the court in that case is conclusive here. Even so, that does not change the conclusion reached above.

Claim 12 of patent 1,336,570, which expired April 13, 1935, on can and cover mechanism, covers, in a can-washing machine, (1) a can support, (2) means for intermittently feeding cans along said support, and (3) an automatically retracting stop limiting the extent of insertion of articles onto said support. This claim was held not to be infringed by the Oakes & Burger machine. The mechanism described to which the claim is applicable comprises stop arms 47 pivoted at 48 to the sides of the reciprocating carriage 16 extended to limit the extent of the insertion of a can to proper position for engagement by the corresponding pawls 11 and adapted to ride on can block so secured by tracks 7. Mechanically equivalent means are shown in defendant's machine to accomplish the same purpose and with the same result. The purpose is to start the can and cover through the machine simultaneously so that, once started together, they will stay together under the positive control of the feeding and stop devices and will emerge from the machine in such positions that the can will get its own proper cover. So far as manual operation of the can and cover is concerned, it is the same in the Rice & Adams machine as in this patent. The can and cover stops synchronize in both machines, and when the can reaches the proper position, the can trips the feed mechanism, whereby the can and cover are both fed forward one step, the stops on both being automatically and temporarily withdrawn from the starting position. Even if there should be found a mechanical change, the whole apparatus for simultaneously advancing the can and cover in the Rice & Adams machine is the mechanical equivalent of the machine described in the patent, and the result accomplished is the same. Movement of various parts of the apparatus in both machines is automatic. Both machines perform in the same way. The prior art depended upon the cans contacting each other, resulting in inaccuracy of feeding the can and its cover so as to emerge simultaneously from the machine, and Lathrop accomplished this latter purpose by the stop means for positioning the cans and covers accurately in their starting positions. This patent is not limited by either the Wegner, Ogilbie, Rassman, or Lathrop patent, No. 1,249,130.

Claims 16 and 17 of patent 1,465,734 relate to and clearly cover the cover-advancing mechanism used by the defendant. In the prior art, the cover is laid on a horizontal or laterally inclined track so that the cover slid, rather than rolled. In the Lathrop patent, rails guide the covers in substantially a vertical plane and they are caused to roll freely on edge on the lower rail of the track, and a series of

movable stops and propelling arms are provided for each station so that when the washing is completed the stop automatically withdraws and the propelling arm starts the cover again. In defendant's machine, notches are provided in the track opposite each station, which are the equivalent of the stops provided in the Lathrop patent. The depressions in the track of defendant's machine called "cradles" may be of some advantage in design, but neither add to nor take anything from the described devices, nor effects the purpose or function of the cover-advancing mechanism. The mechanism used in defendant's machine is duplicated in the starting position of the cover and operates in the same way as is shown in the Lathrop patent. So far as we have been able to discover, Lathrop was the first to propel covers rolling on edge by an automatically operating device. The stop device is pointed out in the claims. Defendant seeks to evade these claims by providing dogs which move horizontally and strike the covers, in place of the upwardly swingable propelling device of the Lathrop patent; but these devices are clearly equivalent. The Taylor patent does not read on claims 16 and 17 of the Lathrop patent. The file wrapper indicates that claim 37, admittedly covering defendant's structure, was canceled; but this cancellation does not limit claims 16 and 17, which were allowed, because claim 37 does not include stops or pivotally mounted arm, both of which features defendant uses.

Obviously, the pivoted arm on the Rice & Adams machine is the equivalent of the paddle in plaintiffs' patent 1,262,679 and has the same purpose, namely, to press the cover down into the can after the washing operation has been completed. In prior machines the cover merely dropped off the cover track onto the can and fitted into the top of the can only because of gravity. It might drop into the top of the can or it might not. In the Lathrop machine the cover is dropped onto the can as before, but the paddle is released and comes down on the cover and drives it in. The paddle strikes the can cover and is elastic, bounds off, and comes down again and again, until the work is done, and this appears in claim 5; but it does not appear in other claims of the patent, which cover a rigid paddle which can do nothing except to take the cover and drive it on. In view of the fact that defendant is estopped to deny infringement of this patent No. 1,262,679 before its expiration, it is of no materiality whether its apparatus for forcing the cover into the can in the Rice & Adams machine is now an infringement of plaintiffs' patent. The prior art offers spring press devices to wedge the cover on (patent 737,216, Forry, and 848,651, Hookey). In the plaintiffs' patents the swinging device positively strikes the cover from above and can be used on a stationary can and is not dependent on the movement of the can; these features are new. In claims 6, 7, 8, and 9, Lathrop distinguished the prior art devices by calling for a positively actuated paddle, rocked in time relation, to strike the cover. The only effect of the cam arrangement in the Rice & Adams machine is to control the velocity of the striking device as it descends. In both cases, the descent of the striking device is substantially the same.

The links in the conveyor chain of defendant are identical in function and method of operation and purpose with the plaintiffs' patents. The defendant explains that the sprocket used to drive the chain in the chain they are now manufacturing is a divided sprocket, the teeth of the sprocket engaging lugs on either side of the chain; faces of these lugs are laid out to correct tooth formation, and the sprocket engaging with the lug is of a rolling nature and is merely a matter of correct engineering and design on either end of the link. Thus, it is substantially conceded that the lugs on the side of the chains for the purpose of the separated drive sprocket is merely a mechanical change, such as might be made by a mere mechanic to correct engineering defects. That, of course, does not involve invention, and concededly the link in the chain used up to the spring of 1934 was the literal reproduction of plaintiffs' patent No. 1,861,632. The link in the chain made subsequent to the spring of 1934 is a mechanical equivalent of the other link. It is admitted that plaintiffs' link is not the first of its kind, but investigation demonstrates that plaintiffs were the first to invent the flexible chain.

Lathrop patent 1,525,304 covers a process for making a concentrated soda solution in the soda wash tank, located below the conveyor mechanism which advances the cans, the solution being sprayed onto the cans and covers from the tank and dripping back into the tank. The tank

is constantly depleted of solution, but fresh water is brought in from the rinse tank and soda added, in order to maintain the desired alkalinity of the solution. There is an auxiliary tank filled with soda crystals, through which water is forced from the bottom of the tank, resulting in a strong soda solution which overflows through a pipe into the soda wash tank; the water in the auxiliary tank being kept hot so as to dissolve the soda crystals. The steam, used by defendant, has a tendency to stir up the soda crystals, but shortly condenses and passes up with the water through the crystals as in the Lathrop process. Defendant's process is clearly covered by the method described in claims 1 and 2 of the Lathrop patent, and there is nothing in the prior art to indicate limitation of the claims. Their validity cannot be attacked.

The Rice & Adams machine manufactured and sold when the license agreement was executed concededly embodied plaintiffs' inventions. A detailed examination of the claims of the patents of the prior art, the physical construction of the machine, and the patents in suit convinces me that the Rice & Adams machine of later manufacture has some change in design and some alteration in the form of apparatus used, but clearly infringes claim 12 of patent 1,336,570, claims 16 and 17 of patent 1,465,734, claim 6 of patent 1,249,130, the claims of patent 1,262,679, claims 1 and 2 of process patent 1,525,304 and patent 1,861,642 on conveyor chain. There is a clear case, not of invention, but of minor reconstruction of the machine and process of plaintiffs' patents, obviously for the purpose of avoiding infringement, but without success. The machines and equipment do the same work in substantially the same way, and defendant has not overcome the presumption of infringement of plaintiffs' patents.

From the above it follows that defendant must pay royalties in accordance with the terms of the contract. It has accounted to April 1, 1934. Computation of royalties due have been made upon the basis of accountings between the parties, made by the defendant and accepted by the plaintiffs, during the period of the contract prior to April 1, 1934. Their own construction of the contract, so far as computations here are concerned, should be adopted. On that basis, from the 1st day of April, 1934, to December 14, 1935, the defendant has sold can-washing machines aggregating $156,574.79, upon which royalties of $11,743.10 are due, and conveyors aggregating $46,610.42, upon which royalties of $4,661.05 are due. This makes a total royalty due between the dates specified of $16,404.54. Interest has been computed to the date of this decision on $1,863.85 from July 1, 1934, on $1,585.95 from October 1, 1934, on $12,892.24 from July 1, 1935, and on $59.50 from April 1, 1934, aggregating a total interest item of $1,646.77. This makes a total of royalties and interest of $18,051.31. The reason that I have taken July 1, 1935, as the date from which to compute interest on the royalties from October 1, 1934, to December 14, 1935, is because that appears from the statements furnished to the court as a fair average interest date; it being impossible from the record before the court to determine the quarterly interest dates. I have not passed upon the disputed question as to the base figure of each machine or conveyor sold upon which royalties should be computed, but have followed, as before stated, the method of accounting and computation arranged between the parties themselves, as set for the period prior to April 1, 1934. I do not agree that the list price of the machine without extras is the proper figure on which royalties are payable. That is the basis on which royalties have been heretofore paid and accepted and on which the present computation is made. The selling price of the complete machine is the basis for royalties fixed by the contract. My computation should not be construed as a determination of the correct basis of computation in any future litigation that may occur between the parties hereto under the contract in suit.

I therefore conclude that plaintiffs are entitled to judgment against the defendant for $18,051.31, and I direct the entry of judgment for that sum, with costs and disbursements to the plaintiffs to be taxed by the clerk.

As above indicated, I have passed only on certain claims in enumerated patents and have held that defendant infringed those claims. That is sufficient here. I do not pass on the question of infringement of other claims in the same or other patents covered by the contract.

The foregoing will constitute the findings of fact and conclusions of law, under Rule 70½ of the Equity Rules (28 U.

S.C.A. following section 723), and section 649 of the Revised Statutes, as amended by Act May 29, 1930 (28 U.S.C.A. § 773), and it is so ordered.